UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| RICK LIND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05-4059 |
| | ) | |
| STATE OF ILLINOIS, through its | ) | |
| Agency THE ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Plaintiff Rick Lind, by his attorneys, Katz, Huntoon & Fieweger, P.C., respectfully

submits the following Motion for Summary Judgment pursuant to Federal Rule of Civil

Procedure 56:

## I.

## INTRODUCTION

Rick Lind moves for summary judgment as to liability because defendant State of

Illinois, through its Agency, the Department of Corrections, admits that it terminated

Rick Lind for alleged unexcused absences between July 24, 2003 and August 6, 2003, yet

its witnesses admitted that before this discipline took place, the Department had available

to it proper and sufficient documentation to show that Rick had a medical condition for

which he was seeking a medical leave of absence for that time period.

2

As demonstrated herein, it is undisputed that the Department is an "employer" as defined in FMLA, that Mr. Lind was an eligible employee, plaintiff conclusively establishes through the Affidavit of Dr. Kevin Freebern that Rick suffered a serious medical condition, and it is undisputed that the Department denied him FMLA benefits when it terminated him. The only issue in this case is whether Rick Lind provided sufficient notice of his intent to take leave. And plaintiff believes there are no material questions of fact that he did: Rick called in each day to report his absence from July 24, 2003 onward due to his back problem, he gave the Department repeated Physician Statements and off work slips, and regardless of any disputes as to precisely what date any one of those documents may have been received by the Department, as a matter of law, this was sufficient notice provided to the Department to trigger its duties under the FMLA. And instead of fulfilling its duties, the Department fired Rick Lind for missing days which it now admits were covered by a proper medical certification. Further, the defendant never properly notified Rick of his rights to seek a leave of absences under the FMLA. Accordingly, summary judgment is proper as to liability in favor of plaintiff Rick Lind.

## II.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  Rick Lind is employed as a correctional officer by the defendant, State of Illinois, through its Agency, The Illinois Department of Corrections, at its correctional

3

facility located in East Moline, Illinois, Rock Island County, State of Illinois. (See Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 2.)

2.   Defendant State of Illinois, by and through its agency Illinois Department of Corrections (hereinafter "DOC" or "Defendant") is an employer and employs more than 50 persons at the East Moline Correctional Center for purposes of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*.  (See Group Exhibit 11, Plaintiff's Complaint and defendant's Answer thereto, ¶ 4.)

3.   Prior to July 23, 2003, Rick Lind had been employed by the defendant as a full-time employee for more than 12 months since he had commenced his employment with the Department of Corrections. (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No.  3)

4.   Prior to July 23, 2003, Rick Lind had been employed by the defendant as a full-time employee and had worked more than 1,250 hours of service during the previous 12-month period. (Id.)

5.   As of July 23, 2003, the East Moline Correctional Center did not have a formal Human Resource representative.  (See Exhibit 12, excerpts from deposition of Pam Verstraete, p. 7.)

6.   Pam Verstraete, whose position in 2003 was Executive Secretary III, was effectively serving as the HR Representative as of July, 2003, or, as she put it, "I was told to do what I could."  (Id, pp. 6-7.)

4

7.  Ms. Verstraete admitted that Rick Lind was a person covered under the Family and Medical Leave Act.  (See Id., p. 13; see also defendant's Answer to Complaint, ¶ 5.)

8.  On July 24, 2003, Rick Lind was provided an Illinois Department of Corrections Personnel Action form for a Request for Leave of Absence from one of the defendant's employees at East Moline Correctional Center. (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No.  5.)

9.  Exhibit 1 attached hereto is a true and correct copy of the Personnel Action Form provided to Rick Lind on July 24, 2003 by the Illinois Department of Corrections. (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No.  6)

10.  Dr. Kevin Freebern, D.C., is a licensed health care professional through the State of Illinois. (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 30.)

11.  Exhibit 2 attached hereto is a true and correct copy of Dr. Kevin L. Freebern's Physician Statement dated July 30, 2003.  (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No.  8.)

12.  Exhibit 3 attached hereto is a true and correct copy of the Findings and Decision of the Illinois Civil Service Commission; case styled Illinois Department of Corrections, Petitioner v. Rick Lind, Respondent, case No. DA 7104.  (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No.  16.)

5

13.  As of July 24, 2003, Rick Lind had available to him six days of alternative use time that he could have utilized for absences.  (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No.  17.)

14.  Rick Lind was not on furnish proof status as of July 24, 2003. (Id. 18.)

15.  Defendant suspended Rick Lind for 30 days pending discharge for missing work on July 24, 25, 28, 29, 30, 31 and August 1, 4, 5, and 6, 2003.  (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No.  24.)

16.  Defendant terminated plaintiff's employment effective November 6, 2003 for missing work on July 24, 25, 28, 29, 30, 31 and August 1, 4, 5, and 6, 2003.  (Id 25.)

17.  The Illinois Civil Service Commission ruled that the Department of Corrections failed to prove that Rick Lind had violated the Department of Corrections' attendance directive when he called in sick on July 24, 25, 28, 29, 30, 31, and August 1, 4, 5, and 6, 2003 and ordered that Rick Lind be reinstated to his former position as a correctional officer (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 23.)

18.  Exhibit 4 attached hereto is a true and correct copy of Section 9: Family Responsibility Leave under the agreement between the State of Illinois and the American Federation of State County and Municipal Employees Council 31 (AFSCME), AFL/CIO in effect for the period of July 1, 2000 through June 30, 2004.  (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 31.)

6

19.   Exhibit 5 attached hereto is a true and correct copy of the transcript of proceedings before the Illinois Civil Service Commission dated February 27, 2004 (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 34.)

20.   Exhibit 6, attached hereto is a true and correct copy of A.D. 03.01.301 Affirmative Attendance Policy in effect at defendant's East Moline Correctional Center as of July 24, 2003  (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 36.)

21.   Exhibit 7 is a true and correct copy of a Physician Statement signed by Dr. Kevin Freebern, D.C. on August 14, 2003. (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 38.)

22.   Exhibit 8 is a true and correct copy of a Release from work signed by Dr. Kevin Freebern, D.C.  (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 40.)

23.   Exhibit 8 indicates that plaintiff was temporarily unable to work from July 24, 2003 to August 7, 2003.  (Id.)

24.   Exhibit 9 are true and correct copies of Notification of Absence forms for the period of July 24 through August 6, 2003.  (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 42.)

25.   The documents in Exhibit 9 were submitted by plaintiff to defendant. (Exhibit 10, Response to Plaintiff's Request for Admission of Facts, No. 43.)

7

## **Testimony of Pam Verstraete**

26.   Defendant disclosed Pam Verstraete as one of the persons providing information for its Answers to Interrogatories.  (See Exhibit 12, Verstraete Dep., pp. 14-15.)

27.   Defendant specifically identified Ms. Verstraete as the person with knowledge of facts to support its denial of Request to Admit No. 7.  (Id., p. 57.)

28.   A portion of defendant's denial of Request to Admit No. 7 states "upon reasonable inquiry, defendant lacks sufficient knowledge to admit or deny whether plaintiff suffered from a serious medical condition from July 24, 2003 to August 7, 2003."  (See Exhibit 10, No. 7 see also Verstraete Dep., Exhibit 12, p. 57.)

29.   Ms. Verstraete admitted she did no investigation to determine whether Rick Lind suffered from a serious medical condition from July 24, 2003 to August 7, 2003.  (See Id.)

30.   Specifically, Ms. Verstraete testified:

"Q.  What facts did you investigate to determine that Mr. Lind wasn't suffering from a low-back problem?

A.  I didn't investigate what his problem was?

Q.  Well, what reasonable inquiry did you make before you state the defendant found that he couldn't admit or deny that request for admission of facts?

Did you look at any medical records?  Did you ask for a medical authorization form from Dr. Freebern's office?  Did you call a meeting with Mr. Lind and anybody to try to clarify whether he was not suffering from his low-back condition?

8

A.  No."  (Id.)

31.  Ms. Verstraete admitted that if Dr. Freebern was stating that Rick Lind was authorized to be off work from July 24, 2003 to August 6, 2003, she would have no independent facts available to her to say that Mr. Lind was able to work during that time period.  (Id., p. 60.)

32.  Ms. Verstraete admitted that she had no personal knowledge of facts which would indicate that Rick Lind was not suffering from a serious health condition as of July 24, 2003 through August 6, 2003.  (Id., p. 16.)

33.  Ms. Verstraete admitted she had no independent facts which indicate that Dr. Freebern was not a licensed medical practitioner by the State of Illinois qualified to render opinions regarding disability and need for medical leave for FMLA purposes.  (Id., pp. 18-19.)

34.  Ms. Verstraete admitted she had no discussions or communications with anyone which would indicate that Dr. Freebern's opinions that Mr. Lind could not work for the period from July 24, 2003 through July 30, 2003 were inaccurate.  (See Id., p. 19.)

> "Q.  And have you had any independent discussions or communications with medical practitioners, whether chiropractic or medical physicians within the State of Illinois - or even outside the State of Illinois, for that matter -- which would indicate that Dr. Freebern's opinions and conclusions that Mr. Lind could not work for the period of July 24th through July 30th, 2003 were inaccurate?
>
> A.  No.
>
> Q.  Or improper?

9

A.  No.

Q.  Or not supported by his examination, care and treatment of the patient?

A.  No."

35.  Ms. Verstraete admitted that Rick Lind was a person who was entitled to notification from the Department of Corrections of his rights to seek a medical leave under the Family and Medical Leave Act as of July, 2003.  (Id., p. 13.)

36.  Ms. Verstraete admitted she has no documentation which would indicate that Rick Lind was in fact notified of his rights under the FMLA between July 23, 2003 and the time of his termination on November 10, 2003.  (See Id., p. 41.)

"Q.  And you haven't seen in a review of Mr. Lind's personnel file any documents which would notify Mr. Lind between July 23, 2003 and up until the time of his termination on November 10, 2003 that the Department of Corrections notified him of his rights under the FMLA, do you?

A.  I have no documentation."

And Id., p. 62-63:

Q.  We already know that you didn't send him any FMLA paperwork, correct?

A.  I didn't send any that was returned, receipt requested that I can find documentation for.

Q.  And you didn't copy any of the paperwork showing that you sent it to him, correct?

A.  Correct."

10

37.  Ms. Verstraete admitted she does not have "any facts" which would indicate if Rick Lind testified or stated that he delivered the Physician's Statement signed and dated by Dr. Freebern on July 30, 2003 to the East Moline Correctional Center, Administrative Office of the Warden, on July 30, 2003, that that testimony would be inaccurate.  (Id., p. 23.)

38.  While Ms. Verstraete admitted she did not know whether the July 30th Physician Statement was received by the DOC on or about July 30, 2003, she did have a receipt indicating the Department of Corrections had this July 30, 2003 Physician Statement by October 1, 2003.  (Id.)

39.  Ms. Verstraete admitted that the July 30, 2003 Physician Statement signed by Dr. Freebern was and is a properly completed form from a licensed physician for purposes of submission for a medical leave of absence and is in no way defective.  (Id., pp. 29-30.)

40.  Ms. Verstraete admitted that Warden Gene Jungwirth was the person who approved the termination of Rick Lind.  (Id., p. 50.)

41.  Ms. Verstraete testified that the July 30, 2003, Physician Statement signed by Dr. Freebern was delivered two weeks prior to the beginning of Rick Lind's suspension.  (Id., p. 46.)

11

42.  Ms. Verstraete testified that she made Warden Gene Jungwirth aware of the fact that the July 30, 2003 Physician's Statement had come in prior to the effective date of the suspension.  (Id., p. 31.)  "I would have, yes."

43.  Ms. Verstraete admitted that by October 1, 2004, Dr. Kevin Freebern, a licensed chiropractic physician from the State of Illinois, certified to the State of Illinois Department of Corrections that Rick Lind had a medical condition relating to his low back that excused him from work for the period of July 24, 2003 through August 6, 2003. (Id., p. 47.)

44.  Ms. Verstraete testified there was nothing deficient in the way the July 30, 2003 Physician form was prepared and signed by the physician.

> "Q.  O.K.  But you said earlier, I believe, in your testimony that you didn't see anything deficient in the way that this Exhibit 2 had been prepared and signed by the physician, correct?
>
> A.  Not this one.
>
> Q.  Meaning the July 30, 2003 was a complete CMS-95 form signed by a licensed Illinois chiropractic physician, correct?
>
> A.  The one that is date stamped October 1st, the Exhibit 2, yes." (Id., pp. 65-66)

45.  Ms. Verstraete admitted that before the discipline of Rick Lind took place, the Department of Corrections had available to it sufficient documentation to show that Rick Lind had a medical condition for which he was seeking a medical leave of absence for the period of July 24, 2003 through August 6, 2003.  (Id., pp. 115-116.)

12

46.  Under paragraph (e) of the Disability Leave of Absence Policy from the Employee Handbook (Exhibit 16), the Warden of East Moline Correctional Center was required to approve or disapprove requests for disability leaves of absence.  (Id., p. 112; Exhibit 16.)

47.  Ms. Verstraete admitted that Warden Jungwirth did not approve or disapprove of the Physician's Statement the Department claims it received October 1, 2003.  (Id., p. 113.)

48.  Ms. Verstraete admitted Warden Jungwirth's failure to approve or disapprove this leave of absence request was a violation of the policy under the Employee Handbook.  (Id.)

> "Q.  Are you aware, before Mr. Lind was fired, whether Warden Jungwirth completed this role; namely approving or disapproving the Physician Statement of -- that you claim was received on October 1, 2003?
>
> A.  And did Warden Jungwirth --
>
> Q.  Approve or disapprove it?
>
> A.  I don't think he did either?
>
> Q.  O.K.  And that would be a violation of the policy under the Employee Handbook, wouldn't it?
>
> A.  Yes."

49.  Ms. Verstraete admitted that the second Physician Statement signed by Dr. Freebern, bearing the date of 8/14/03, was received by the East Moline Correctional Center on or before September 5, 2003.  (Id., p. 67.)

13

50.  Ms. Verstraete admitted that the first time the East Moline Correctional Center requested additional information relative to Rick Lind's request for medical leave of absence (pursuant to the 8/14/03 Physician Statement) was its letter of September 5, 2003 in which Warden Jungwirth sought clarification and completion of the form filled out by Dr. Freebern.  (Id., p. 70.)

51.  Ms. Verstraete admitted that the Department took disciplinary action within three days of its request for additional information on September 5, 2003.  (Id.)

52.  Ms. Verstraete admitted that Warden Jungwirth neither approved or disapproved the second Physician Statement signed by Dr. Freebern indicating a date of August 14, 2003.  (Id., p. 114.)  "I don't believe he approved or denied it."

53.  Ms. Verstraete admitted that the failure of Warden Jungwirth to approve or disapprove the second Physician Statement would be a violation of the Disability Leave of Absence Policy under ¶ (e).  (Id.)

"A.  I don't believe he approved or denied it.

Q.  And that, again, would be a violation of the Disability Leave of Absence Policy under ¶ (e), correct?

A.  Yes."

54.  Ms. Verstraete admitted that Warden Jungwirth failed to do his job in processing either of Rick Lind's requests for disability leave and taking discipline against him after failing to process those requests.  (Id., p. 115.)

14

"Q.  He failed to do his job in processing either of these requests; namely, Verstraete 2 or Verstraete 9?

A.  He did not process them, no.

Q.  And took discipline against Mr. Lind after failing to process the requests for the leave of absence, correct?

A.  Yes."

55.  Pam Verstraete admitted that she has no facts to indicate that after Dr. Kevin Freebern released Rick Lind from work for the period of July 24, 2003 to August 7, 2003 was received, that anyone from the Department of Corrections requested clarification from Rick Lind or his physician as to why Rick Lind needed that leave of absence.  (Id., p. 78.)

### Testimony of Warden Gene Jungwirth

56.  Gene Jungwirth became the acting Warden of the East Moline Correctional Center in June or July of 2003.  (See Exhibit 13, excepts from deposition of Warden Jungwirth, p. 6.)

57.  Warden Jungwirth agreed he was the decision maker with respect to the decision to suspend Mr. Lind for 30 days and then to fire him.  (Id., p. 11.)

58.  Warden Jungwirth admitted that as of July 2003 the defendant through its East Moline Correctional Center was subject to the provisions of the Family and Medical Leave Act.  (Id., p. 13.)

15

59.  Warden Jungwirth admitted he had no facts which would indicate that Rick Lind did not request a medical leave of absence on or about July 30, 2003.  (Id., p. 22.)

60.  Warden Jungwirth admitted that the July 30, 2003 Physician Statement appeared to be a CMS-95 form signed by a licensed chiropractic physician personally and completed in compliance with subsection C of the Disability Leave Policy under the Employee Handbook at the East Moline Correctional Center.  (Id., p. 25; Exhibit 16.)

61.  Exhibit 16, a true and correct copy of the Employee Handbook from the East Moline Correctional Center, is also attached hereto and made a part of this Motion.

62.  Warden Jungwirth agreed that the July 30, 2003 CMS-95 form was in the control of his office by October 1, 2003  (Id., p. 27.)

63.  Warden Jungwirth agreed that Exhibit 2 attached to this Motion is a "fully completed Physician's Statement under the requirements of CMS-95.  (Id.)

64.  Warden Jungwirth agreed that under the Disability of Absence Policy, he had the duty to approve or disapprove that leave request.  (Id.)

65.  Warden Jungwirth admitted that he never made a decision whether to approve Rick Lind's disability leave of absence request.  (Id., p. 32.)

66.  Warden Jungwirth admitted that Exhibit 1 should have been able to be used by him under subparagraph (e) of the Disability Leave of Absence Policy:

"Q.  That appears to be fully completed, correct?

A.  Yes, sir.

16

Q.  And that should have been able to be used by you as the Warden to implement your allegations (sic) under subparagraph (e) of the Disability Leave of Absence Policy, … correct?

A.  As all of this has been completed and its appears here, yes, sir.

Q.  And you didn't do it?

A.  At that point, no, I do not."  (Id., p. 34.)

67.  Warden Jungwirth admitted that he did not ever personally advise Rick Lind between July 24, 2003 and November 6, 2003 of his rights to seek a Family and Medical Leave Act leave of absence.  (Id., p. 36.)

68.  Warden Jungwirth agreed that prior to the imposition of discipline commencing October 9, 2003, he made no action whether to approve or disapprove the August 14, 2003 request for disability leave form.  (Exhibit 7; Id., p. 41.)

69.  Exhibit 9 attached hereto are known as "Half slips for notification of absence that were used by the Illinois Department of Corrections during July and August 2003."  (Id., p. 48.)

70.  Warden Jungwirth admitted that the "Half slips (Exhibit 9) are sufficient for approval of a leave of absence if the employee is not on furnish proof status.  (Id.)

71.  Warden Jungwirth personally denied Rick Lind's request for use of sick time to cover his absences (Exhibit 9) by his signature on August 19, 2003.  (Id.)

72.  Warden Jungwirth denied each of those requests for sick time (Exhibit 9) because he believed Ms. Lind was on furnish proof status at that time.  (Id.)

17

"Q.  And you did that because you believed Mr. Lind was on furnish proof status?

A.  That is correct."

73.  Warden Jungwirth admitted that it has been determined that Rick Lind was not on furnish proof status at that time.  (Id., p. 32.)  ("That is correct, yes.")

74.  Warden Jungwirth admitted that Exhibits 8 and 9 together would have been sufficient proof under the furnish proof status policy for Rick Lind to have been approved for the days off between July 24, 2003 and August 7, 2003.  (Id., pp. 50-51.)

75.  Warden Jungwirth admitted that if Rick Lind were told for the first time on September 5, 2003 that the documentation he had been providing from this physician was defective, then the Department did not allow Mr. Lind a 14-day period in which to submit new paperwork before it conducted a hearing to impose discipline on Rick.  (Id., p. 57.)

76.  Warden Jungwirth admitted that by the Department's September 5, 2003 letter, the Department was asking Mr. Lind for more information or corrected information, but then three days later fired him or recommended that he be fired.  (Id., p. 60.)

77.  Warden Jungwirth admitted that if Rick Lind were not on furnish proof status and had six days of alternate time available to him, he should have been able to use that alternative time in 2003.  (Id., p. 73.)

18

78.  Warden Jungwirth admitted that Rick Lind would not be required to provide medical documentation to cover his absences if he was not on furnish proof status in July/August 2003.  (Id., p. 78.)

### Affidavit of Dr. Kevin Freebern

79.  Rick Lind has been a long-time patient of Dr. Kevin Freebern, a chiropractic physician licensed by the State of Illinois.  (See Exhibit 14, Affidavit of Kevin Freebern, ¶¶ 2-3.

80.  Rick Lind presented to Dr. Freebern for treatment of low back pain on July 24, 2003.  (Id, ¶ 4.)

81.  On July 24, 2003, Dr. Freebern diagnosed Rick Lind with cervical subluxation, headaches, thoracic subluxation, muscle spasms, lumbar subluxation and pelvic subluxation.  (Id.)

82.  On July 30, 2003, Dr. Freebern completed a Physician Statement at the request of Mr. Lind setting forth his findings and diagnosis and course of treatment and signed the document and provided it to Mr. Lind on July 30, 2003.  (Id., ¶ 5.)

83.  Dr. Freebern completed a second Physician Statement on August 14, 2003 based on his examination of Mr. Lind on August 6, 2003, setting forth his findings, diagnosis and prescribed course of treatment.  (Id., ¶ 6.)

84.  Dr. Freebern found that Mr. Lind was unable to work as of August 6, 2003 and would not be able to resume work until August 7, 2003.  (Id.)

19

85.  Dr. Freebern signed the second Physician Statement on August 14, 2003 and provided that to Mr. Lind on that same day.  (Id.)

86.  Additionally, Dr. Freebern completed a temporary release from work document on his own office form on August 4, 2003 in which he released Rick Lind from work for the period of July 24, 2003 to August 7, 2003.  (Id., ¶ 7.)

87.  Dr. Freebern provided the August 4, 2003 release from work document to Rick Lind on August 4, 2003.  (Id.)

88.  It is the opinion of Dr. Kevin Freebern, within a reasonable degree of chiropractic medical certainty, that beginning July 24, 2003, and continuing through August 6, 2003, that Rick Lind suffered from cervical subluxation, headaches, thoracic subluxation, muscle spasms, lumbar subluxation and pelvic subluxation. (Id., ¶ 8.)

89.  It is Dr. Freebern's opinion, within a reasonable degree of chiropractic medical certainty, that those conditions of ill-being produced headaches, poor cervical range of motion, with inflammation, tense and tender cervical and thoracic muscles, stiffness and soreness of the mid and low back, prevented Rick Lind from being able to sleep, interfered with this concentration, all to the effect that Mr. Lind was unable to work at his position as a correctional officer at the East Moline Correctional Center for the period of July 24, 2003 through August 6, 2003.  (Id.)

20

## Factual Findings of the Administrative Law Judge
## and Illinois Civil Service Commission

90.  On January 20, 2005, the Illinois Civil Service Commission, in case No.

DA-71-04 adopted the decision of the Administrative Law Judge dated January 7, 2005.

(Exhibit 3, p. 1.)

91.  In the decision of the Administrative Law Judge dated January 7, 2005, in

case No. DA-71-04, the ALJ found:

> "The evidence in the case shows, in addition to submitted two requests for disability leave, Lind timely submitted leave of absence slips and a doctor's note for the days in which Lind was absent from work."

92.  In the decision of the Administrative Law Judge dated January 7, 2005, in

case No. DA-71-04, the ALJ found:

> "The evidence indicates that Lind had approximately six days of alternative benefit time that he could have used towards his absences from work."  (Id.)

93.  In the decision of the Administrative Law Judge dated January 7, 2005, in

case No. DA-71-04, the ALJ found:

> "The DOC should have authorized Lind's use of alternative benefit time for the days he was absent from work."

21

## **ARGUMENT**

The standards for summary judgment are well settled:

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as matter of law. See, Lindermann v. Mobil Oil Corp., 141 F.3d 290, 294 (7th Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. See, *id*. In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. See, Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995)." Baumgarden v. Challenge Unlimited, Inc., 2005 U.S. Dist. LEXIS 30423 (S.D. Ill. 2005) (granting summary judgment to plaintiff on FMLA claim).

To give this court some context, back in June 1979, Rick Lind nearly died in a car accident, suffering compression fractures at L4-6. (See Exhibit 15, excerpts from deposition of Rick Lind, p. 21.) He somewhat healed, but in his "early 40's" was diagnosed with deteriorating discs, stenosis and arthritis in the low back. (Id., p. 22.)

Lind is a long-time employee as a correctional officer of the Department of Corrections "having begun his employment on November 12, 1984." (See Exhibit 5, Finding of Fact, ¶ 19 at p. 6.) Shortly before July 24, 2003, Lind had a "flare-up" of his episodic low back problems. As he testified "it hurt like hell." (Exhibit 15, Lind Dep., p. 25.)

22

"Q.  You indicated that July 24 was your first day off work; correct?

A.  Yes.

Q.  And did you call in prior to your shift?

A.  Yes.  I called in every day.

Q.  Why did you call in on July 24, 2003?

A.  Because I wasn't feeling well.

Q.  Would you agree that July 24 was the first day of flare-up or an episode of symptoms that extended through until August of 2003?

A.  Yes.  I would."  (Id., p. 26.)

Plaintiff fully concedes that there is a disputed fact in this case.  Pam Verstraete denies receiving the "CMS-95" form (Exhibit 2) on July 30, 2003.  Rick Lind testifies that he personally handed that document to her:

"Q.  Who did you provide the first CMS-95 to?

A.  Pam Verstraete.

Q.  And when did you provide her that document?

A.  On 7-30.

Q.  How do you know that it was July 30?  How do you recall that?

A.  Because that's when I turned it in.

Q.  And is there any -- I mean, was it your spouse's birthday, or is there something that makes that date stand out in your mind?

A.  That's when the doctor signed my paperwork, and I brought it immediately to the Warden's office."  (Id., p. 29.)

23

For the court's additional background information, it is absolutely not the case that Rick Lind and his union representative simply sat back assuming the July 30, 2003 CMS-95 form had been received and was being processed.  Defendant has admitted that Exhibit 5 was a true and correct copy of the proceedings on February 27, 2004 before the Administrative Law Judge and the Illinois Civil Service Commission.  At page 106 of that transcript appears the following testimony of Jeff Papish, plaintiff's union representative:

"Q.  And Rick also submitted a request for a disability leave of absence with the Physician Statement of July 30, 2003; is that correct?

A.  That is correct.

Q.  Did you check on the status of that?

A.  Myself and the union vice-president. …  The first time we went down to check on it we went together, and they assured us that it was sent off.

Q.  Who assured you?

A.  Pam Verstraete and the other lady that works in the office down there. They assured us many times that it was sent off.  They're waiting word.  They're waiting word.  And nothing ever came back.  Nothing ever came back.  And, you know, that's all we can go on is what they tell us."  (Exhibit 5, p. 106.)

Plaintiff respectfully moves this court for summary judgment as to liability because, regardless of whether there is a question of fact when Rick Lind provided this first Physician Statement signed by Dr. Freebern, defendant's numerous admissions

24

demonstrate there are no questions of material facts as to the essential elements of plaintiff's FMLA interference claim.

As summarized in <u>Burnett</u> v. <u>LFW Inc</u>., 2006 U.S. App. LEXIS 31746 (7th Cir. 2006):

> "To prevail on an FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required**.** <u>Hoge</u>, 384 F.3d at 244. Accordingly, the employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA**,** (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."

Making this court's analysis much easier, plaintiff believes defendant has admitted the first, second, third and the fifth elements outlined in <u>Burnett</u>, leaving only whether Rick Lind provided sufficient notice of his intent to take leave at issue.

Specifically, as outlined in plaintiff's Statement of Undisputed Facts, the defendant DOC admitted that it is covered by the FMLA, that Rick Lind is eligible for the FMLA protections, and that as of July 24, 2003, he was entitled to leave under the FMLA. (See Statement of Undisputed Facts, ¶¶ 2-4, 7 and 35.) And, of course, it is undisputed that the DOC denied Rick Lind any FMLA benefits when it terminated him for missing work for the period of July 24th through August 6, 2003. Importantly, it is undisputed in this case that the singular reason for suspending and firing Rick was because he missed work on July 24, 25, 28-31, August 1 and 4-6, 2003. (See Exhibit 10, Defendant's Response to Request to Admit, No. 25.) Accordingly, if Rick Lind provided sufficient Notice of his

25

intent to take leave during the period of July 24 through August 6, 2003, he should be entitled to summary judgment.

In a nutshell, plaintiff's argument is that it is undisputed Rick Lind called in sick for every day of absence that is at issue here (July 24 through August 6, 2003). (See Exhibit 8, the DOC's half slips "evidencing that plaintiff called in for each day of absence, as well as Exhibit 10, defendant's Response to Request to Admit Nos. 42-43.) It is undisputed someone from DOC provided Mr. Lind the "Personnel Action Form" on July 24, 2003 for a disability leave of absence. (See Exhibit 1, as well as Exhibit 10, Defendant's Response to Request to Admit Nos. 5-6.) It is undisputed that Dr. Kevin Freebern signed the "Authorization for Disability Leave and Return to Work Authorization" (technically referred to as the CMS-95, sometimes referred to as the "Physician Statement") (See Exhibit 2) on July 30, 2003. And it is undisputed that the DOC received Exhibit 8, the Release from Work form dated August 4, 2003, signed by Dr. Freebern, indicating plaintiff was temporarily unable to work from July 24, 2003 to August 7, 2003. (See Exhibit 8, as well as Exhibit 10, defendant's Responses to Request to Admit No. 40.)

While it may be disputed exactly when the DOC came into possession of the July 30, 2003 Physician Statement, that dispute is simply not material. It is not material because:

26

1.  At the very latest, the DOC had this Physician Statement by October 1, 2003, prior to the commencement of plaintiff's suspension on October 9, 2003 and obviously prior to his termination on November 6, 2003;

2.  Lind submitted a second physician's statement signed by Dr. Freebern on 8/14/03 which the DOC admits it received sometime prior to September 5, 2003 and, to the extent there were any alleged deficiencies in this statement, defendant never gave Lind 15 days to cure any such deficiencies as required by the FMLA; and

3.  This is all irrelevant anyway - the DOC knew Rick Lind was missing work because he was claiming he had a serious low back problem, and never fulfilled its duties under the FMLA.

Plaintiff will start with this last point.  It is undisputed that at some point the DOC knew Rick Lind was claiming this low back injury as the reason he was missing all of these days, yet never informed Lind of any of his rights under the FMLA and, frankly, never truly started Rick Lind on any FMLA required timeline of providing a sufficient certification within 15 days.  There is not a shred of evidence in this case the DOC actually provided Rick Lind any FMLA notice.

But the primary point remains that defendant knew Lind was requesting leave for what could be a possible FMLA leave situation.  As Pam Verstraete admitted:

"Q.  You knew by mid-August 2003 that Rick was missing this work because he was claiming that he had a low-back problem?

27

A.  Rick came in one day, and I asked him how he was doing.  He said his back still hurt.  I don't know what date that was.

Q.  It was prior to his firing, right?

A.  Yes."  (Exhibit 12, Verstraete Dep., p. 45.)

So Rick Lind is calling in sick and filling in the appropriate forms for every day of absence; he has requested and been provided on July 24, 2003 with a Disability Leave Request form; at some point he specifically tells Pam Verstraete his back hurt. Additionally, defendant admits it received Dr. Freebern's August 4, 2003 off work slip. (Exhibit 8.)  Under Seventh Circuit authority, this is more than enough for plaintiff to fulfill his initial duty under the FMLA to provide notice.

In Price v. City of Fort Wayne, 117 F.3d 1022, 1025-26 (7th Cir. 1997), that plaintiff:

"filled out the City-provided leave request form and indicated that the cause was medical need.  She attached a doctor's note requiring her to take the time off. This was sufficient information to put the City on notice that this was a possible FMLA leave situation.  See Manuel v. Westlake Polymers Corp., 66 F.3d 758, 760, 764 (5th Cir. 1995).  It was then the City's responsibility to inquire further. See 29 C.F.R. § 825.303(b); Endry v. GTE North, Inc., 896 F.Supp. 816, 828 (N.D. Ind. 1995)."

The Price court noted:

"…the Department of Labor regulations repeatedly emphasize that it is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave. For example, 'the employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means.' 29 C.F.R. § 825.303(b).  Further, "in all circumstances, it is the employer's responsibility to designate leave, paid or

28

unpaid, as FMLA-qualifying, and to give notice of the designation to the employee."  29 U.S.C. § 825.208(a).

As summarized in McNeela v. United Airlines, Inc., 1999 Lexis 20042 (N.D. Ill. 1999):

> "In short, 'it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA qualifying leave is needed.' Stoops v. One Call Communications, Inc., 141 F.3d 309, 312 (7th Cir. 1998).  'What is practicable, both in terms of the timing of the notice and its content, will depend on the facts and circumstances of each individual case.  The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.' Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995); see also Price, 117 F.3d at 1026.  And 'when an employee provides notice that leave is needed, the employer must investigate further if it needs additional information.' Stoops, 141 F.3d at 312"

As evidenced in the factual findings of the Administrative Law Judge attached as Exhibit 3, it was specifically found that defendant's business administrator understood "that Mr. Lind was seeking a non-service related leave … on July 24, 2003;" and further found that Lind himself had "called in sick and requested a leave of absence on Form CMS-95 …" and that he obtained that form at the Warden's office, with the State's own employee filling "in the date of July 24th" and once against reciting that Lind "requested the leave of absence on July 24."  (See Exhibit 3, p. 6, ¶¶ 20-21.)  Rick told the Illinois Department of Corrections on July 24, 2003 that he needed a medical leave of absence because of his degenerative disc disease and was provided the forms necessary to submit medical proof for the leave.  Compare these facts with the plaintiffs in the McNeela case:

29

"In this case, plaintiffs submit enough evidence indicating a genuine issue of material fact as to whether they provided adequate notice of their need for FMLA leave. The record shows that Grish knew that plaintiffs were involved in a work-related injury that required medical treatment. Further, Hubble claims that he spoke to Grish at the hospital on August 11th and told him that he was in a lot of pain and the doctors were not sure if he had broken his neck. As for McNeela, he claims that he left a voicemail for Grish on August 11th stating that he would be out of work for a week following his injuries." (Id. at **14-15.)

As that court concluded:

"Given the FMLA's substantial deference to employees with respect to notice of their need for FMLA leave, plaintiffs have submitted enough evidence to create a genuine issue of material fact on the notice issue and therefore withstand United's motion for summary judgment. Cf. Price, 117 F.3d at 1026 ('the Department of Labor Regulations repeatedly emphasize that it is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA.'"

See also Dinkins v. Varsity Contractors, Inc., 2005 Lexis 6732 (N.D. Ill. March 10, 2005) at **28-29:

"The FMLA does not require employees to 'expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.' 29 C.F.R. § 825.303(b). The Seventh Circuit has held that the employee satisfies his notice requirement by requesting leave for a covered reason. Price v. City of Fort Wayne, 117 F.3d 1022, 1026 (7th Cir. 1997); see also Aubuchon v. Canuff Fiberglass GmbH, 359 F.3d 950, 953 (7th Cir. 2004) (an employee is not required to write a 'brief demonstrating legal entitlement' but must give the employer 'enough information to establish probable cause … to believe that he is entitled to FMLA leave.') Such notice is sufficient to trigger the employer's duty to request such additional information from the employee's doctor as may be necessary to confirm the employee's entitlement. 29 C.F.R. §§ 825.302(c)-(d). …"

Rick was not required to state the words, "FMLA" when he asked for the leave for his back condition on July 24, 2003. Finally, to preempt defendant's argument if it again (as it did supporting its Motion to Dismiss) cites Aubuchon v. Canuff Fiberglass, 359

30

F.3d 950, 951-52 (7th Cir. 2004), for the proposition that the requirement of notice is not

satisfied "by the employees merely demanding leave.  He must give the employer a

reason to believe that he is entitled to it," immediately thereafter, Judge Posner writes:

> "So that the scope of our holding is clear, we emphasize that the employee's duty is <u>merely to place the employer on notice of</u> a probable basis for FMLA leave.  He doesn't have to write a brief demonstrating a legal entitlement.  He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave.  That is enough to trigger the employer's duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement."  (<u>Aubuchon</u>, 359 F.3d at 953.)

Here, Rick Lind gave the DOC enough information to establish "probable cause"

that he was entitled to FMLA leave.  He undisputedly calls in sick every day, fills in the

"half slip," requests for medical leave and is given the Disability Leave Form on July 24,

2003 and undisputedly at some point specifically tells Pam Verstraete by her admission

that his request is because his back hurt.  Rick also turns in another off work slip signed

by Dr. Freebern releasing him from work for the period of July 24 to August 6, 2003.

"That is enough to trigger" the DOC's duty to request any additional information it

wanted -- there is not a shred of evidence it ever did.  Defendant will certainly argue there

are questions of fact whether Rick Lind provided the Physician Statement which it now

admits was proper and sufficient to invoke FMLA protections on July 30, 2003.  But it

simply does not matter because Rick Lind triggered the DOC's duty to request this

additional information, which it never did.  Even if, somehow, the DOC did not receive

this properly completed Physician Statement until October 1, 2003, because the DOC

31

never fulfilled its duty to request additional information receipt by October 1, 2003 was certainly timely -- it was before he was on suspension and before he was fired.

But there is a second and alternate ground for precluding this issue of fact as to when Rick Lind gave the July 30, 2003 Physician Statement of preventing summary judgment of being granted in plaintiff's favor. While there may be some dispute as to exactly when this first Physician Statement was provided, there is no dispute the second Physician Statement dated August 14, 2003 was provided at some point prior to September 5, 2003. And we know this because the DOC, which doesn't appear to be very good about documenting when it receives any documents from its employees, had to admit it had recorded this second Physician Statement before the disciplinary hearing because it wrote Lind a letter on September 5, 2003 claiming deficiencies in that Physician Statement.

As shown in the Statement of Facts, Pam Verstraete admitted that the August 14, 2003 Physician Statement had been received by the East Moline Correctional Center before September 5, 2003. (See Exhibit 12, Verstraete Dep., p. 67.) Verstraete further admitted:

> "Q. And you would agree that you have no proof that Mr. Lind received the Warden's letter prior to his September 8 ERB hearing, do you?
>
> A. No." (Id.)

Plaintiff would further ask this court to take judicial notice that September 5, 2003 was a Friday. Obviously, a letter mailed to Rick Lind on Friday could not have been

32

received by him prior to the Monday, September 8, 2003, hearing from which Warden Jungwirth made his decision to terminate Rick Lind.  Further, Verstraete admitted that this September 5, 2003 letter was the first time defendant had ever requested additional information relevant to Rick Lind's request for medical leave of absence.

> "Q. … Would you agree with me that the first time that the East Moline Correctional Center requested additional information relative to Rick's request for a medical leave of absence was the September 5, 2003 letter of Warden Jungwirth where you sought clarification and a completion of the form filled out by Dr. Freebern?
>
> A.  Are we talking about the CMS-95 that's dated 8/14?
>
> Q.  Absolutely?
>
> A.  **Yes**.
>
> Q.  And would you agree with me that less than 14 days elapsed before the ERB hearing resulted?
>
> A.  Yes."  (<u>Id</u>., p. 70.)

Likewise, Warden Jungwirth admitted that the disciplinary hearing took place less than 14 days from the September 5, 2003 hearing.  (Exhibit 13, p. 57.)

Accordingly, it is undisputed that the first time the DOC possibly invoked the FMLA or attempted to fulfill any of its duties to request additional information under the FMLA was September 5, 2003.  At that point, under the FMLA mandatory regulations, defendant had to provide Rick Lind 15 days to cure.  It is undisputed it did not give him any business days prior to the hearing on September 8, 2003, at which a decision was

33

made by the Warden to suspend him pending termination.  Accordingly, summary

judgment is appropriate in plaintiff's favor on this second ground.

As stated in <u>Kaufmann</u> v. <u>Fed. Express Corp</u>., 426 F.3d 880**,** 886 (7th Cir. 2005):

"Under the regulations, if the employer 'finds a certification incomplete**,**' it must 'provide the employee a reasonable opportunity to cure any such deficiency.' 29 C.F.R. § 825.305(d); <u>Sorrell</u> v. <u>Rinker Materials Corp</u>., 395 F.3d 332, 337-38 (6th Cir. 2005); <u>Miller</u> v. <u>AT&T Corp</u>., 250 F.3d 820, 836 (4th Cir. 2001)."

<u>Sorrell</u> v. <u>Rinker Materials Corp</u>., 395 F.3d 332,337 (6th Cir. 2005) explains:

"Pursuant to 29 C.F.R. § 825.305(d), if Rinker found Dr. Opremcak's medical certification incomplete, it had a duty to advise Sorrell of that fact and to provide Sorrell a reasonable opportunity to cure any such deficiency in the certification. Although we have located no cases from this Court that provide any guidance with respect to this issue, several district courts in other jurisdictions have held that an employer may not assert incompleteness of a medical certification as grounds for disciplining an employee where the employer never notified the employee of the problem or gave him an opportunity to cure it. See, e.g., <u>Marrero</u> v. <u>Camden County Bd. of Soc. Servs.</u>, 164 F.Supp.2d 445, 466 (D.N.J. 2001) ('termination is not an appropriate response for an inadequate certification' because 'section 825.305(d) provides that where an employer finds a certification incomplete, it must give the employee a reasonable opportunity to cure any deficiencies'); <u>Sims</u> v. <u>Alameda-Contra Costa Transit Dist.</u>, 2 F.Supp.2d 1253, 1266-68 (N.D. Cal. 1998) (holding that although the employee's medical certification was incomplete because it failed to certify that his serious health condition lasted the full duration of his absence from work, the employer waived its right to argue that the employee did not suffer from a serious health condition by failing to notify the employee of the problem or to afford him the opportunity to cure it)."

Here, the DOC provided Lind no opportunity to "cure" any alleged deficiencies in the

August 14, 2003 certification.  Again, the very first time defendant ever advised Rick

Lind that it found the August 14, 2003 certification "incomplete," was by a letter sent

Friday, September 5, 2003.  No matter how you count it, there are not 15 calendar days

34

between Friday, September 5, 2003 and Monday, September 8, 2003.  It is undisputed

that Rick had not received Warden Jungwirth's letter prior to the September 8, 2003

disciplinary hearing.  (Exhibit 15, pp. 42, 44.)

> "Q.  What did you do in response to receiving the Memorandum dated September 5, 2003?
>
> A.  I called the Warden's office … and I said I didn't have enough time to get … my paperwork correct.  I requested more time, and the hearing was already held. …
>
> Q.  Do you recall whether or not you received it prior to the day that your ERB was scheduled?
>
> A.  No, I couldn't have.  …
>
> Q.  What did you tell the Warden?
>
> A.  I told him I didn't have a chance -- time to request these things that he wanted.
>
> Q.  Time for when?  What do you mean?
>
> A.  Before my ERB.
>
> Q.  And what was his response?
>
> A.  He said he was sorry, there was nothing he could do about it."

As a matter of undisputed fact and law, the DOC "**must**" provide Rick Lind 15 days to

submit the "cured" certificate, which it failed to do.  Its undisputed failure to do this

provides additional grounds for summary judgment for plaintiff as to liability.

The third and final alternative ground for summary judgment in plaintiff's favor

(and third reason why any disputed fact as to exactly when Rick Lind provided his July

35

30, 2003 certificate is not material), is that it is undisputed that defendant had in its possession prior to the commencement of Rick Lind's formal suspension on October 9 and prior to his termination on November 6, 2003 a certification which it admits was completely adequate to support an excused leave of absence for the dates at question in this litigation (July 24-August 6, 2003). And relatedly, it is also undisputed that the Department violated its own written policy requirements that Warden Jungwirth approve or disapprove this leave, which he undisputedly never did. In other words, before Rick Lind was fired, the Department had a completely sufficient medical authorization for leave which it (a) never approved or disapproved as required by its own policies and (b) which it never used simply to overturn the decision to suspend/terminate Rick Lind when it is undisputed that the days in question should have been medically excused.

Pam Verstraete made some honest concessions in her deposition. She fully admitted by October 1, 2003, she had in her possession a completed Physician Statement requesting disability leave for the time period in issue - July 24 through August 6, 2003 - that was a full and complete request, properly prepared. She further admitted that under the Department's policies, the Warden was required to approve or disapprove this properly prepared request for leave. Finally, she admitted that the Warden did not approve or disapprove and therefore violated the Department's own policy.

> "Q. And under paragraph (e) of the Disability Leave of Absence, it says, 'The Warden will approve or disapprove the leave, correct?'
>
> A. Correct.

36

Q.  Now, you had in possession by October 1 a completed Physician Statement requesting a disability leave of absence for the period of July 24 through August 6, 2003 that you testified under oath was a full and complete request and CMS-95 form properly prepared by a physician, correct?

A.  Correct.

Q.  And you are aware, before Mr. Lind was fired, whether Warden Jungwirth completed this role, namely, approving or disapproving the Physician Statement of -- that you claim was received on October 1, 2003? …

A.  I don't think he did either.

Q.  O.K.  And that would be a violation of the policy under the Employee Handbook, wouldn't it?

A.  Yes."  (See Exhibit 12, Verstraete, pp. 112-113.)

Boiled down to its most basic, the following admission by defendant mandates

summary judgment for plaintiff:

"Q.  So regardless of when all this got completed, before the discipline took place, available to the Department of Corrections was sufficient documentation to show that Mr. Lind had a medical condition for which he was seeking a medical leave of absence for the period of 7-24-03 through 8-6-03, correct?

A.  Yes."  (Id., pp. 115-116.)

See Kaufmann, 426 F.3d at 885:

"Because Kauffman claimed an unforeseeable, serious health condition, he had '15 calendar days after the employer's request' to submit certification from his physician. See 29 C.F.R. § 825.305(b); Rager v. Dade Behring, Inc., 210 F.3d 776, 777 (7th Cir. 2000) (explaining that an employer may require certification, but if the health condition was 'unforeseeable,' the employee must have 'at least 15 calendar days in which to submit it')."

37

As <u>Kaufmann</u> concluded:

> "More to the point, the doctor's certification provides enough information to satisfy the statute. That form tells us that Kauffman had bronchitis that started on January 1, incapacitated him for more than three calendar days, required two doctor's visits, and kept him from being able to work. No matter what form is used, this information is the only information required for a sufficient certification. *See* 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306(b). True, we do not know the incapacity's exact duration, at least not until we look at the doctor's addendum that Kauffman submitted and FedEx refused during his appeal. But all we really need to know is that the incapacity, bronchitis, lasted for more than three calendar days. In any event, a failure to include duration in this case means at best that the form was incomplete. FedEx could not win its case by arguing that the form was incomplete; in that event, FedEx would have been required to, but did not, notify Kauffman and give him the opportunity to cure the deficiency, See 29 C.F.R. § 825.305(d); <u>Sorrell</u>, 395 F.3d at 336-37; <u>Miller</u>, 250 F.3d at 836. Indeed, when FedEx belatedly challenged Kauffman's certification, it refused to accept his addendum, so any argument by FedEx that the certification was incomplete would simply spotlight an even clearer case of liability." (426 F.3d at 887.)

Here, it was unforeseeable that Rick's chronic back condition would flare-up on July 24, 2003, thereby necessitating his medical leave. This is no dispute that Rick's medical leave lasted more than three calendar days. The defendant never requested any clarification of the numerous written medical notifications of Rick's absence until September 5, 2003, and then held a disciplinary hearing three days later which resulted in Rick's suspension and termination.

<u>Yntema</u> v. <u>United States Postal Service</u>, 2006 U.S. Dist. LEXIS 18816 (N.D. Ohio 2006):

> "'Employers cannot deny FMLA relief for failure to comply with their internal notice requirements.' <u>Cavin</u> v. <u>Honda of Am. Mfg., Inc.</u>, 346 F.3d 713, 723 (6th Cir. 2003) (citing 29 C.F.R. § 825.302). Thus the issue is whether

38

Yntema complied with the notice requirements under the FMLA, not under the USPS's requirements.

…

Taking the evidence in the light most favorable to the USPS, there is no genuine issue of material fact that the USPS had notice of her FMLA request. Yntema's FMLA form was undoubtedly received by someone at the post office on August 21, 2003, because it was stamped with a USPS stamp as of that date. On this form, Dr. Sherman indicated Yntema was suffering from 'severe anxiety and depression,' which qualifies as a serious medical condition, and that she needed FMLA leave via a reduced work schedule.

…

The USPS responds that even if Yntema provided notice, the FMLA form Yntema provided to the Postal Service did not satisfy FMLA requirements.

The response to this contention is that, had the USPS properly treated Yntema's request as a FMLA matter, it would have asked for any additional medical information that was needed, and she would have addressed any concerns. An employer has the 'duty to collect additional information … that would be necessary to make his [the employee's] leave comply with FMLA requirements.' Cavin, 346 F.3d at 726; 29 C.F.R. § 825.208(a). Any defect in the information is attributable to the unresponsiveness of the USPS under FMLA, and not to any insufficiency of the USPS under FMLA, and not to any insufficiency on Yntema's part in how she presented her request for leave." 2006 U.S. Dist. LEXIS 18816 at *8, **9-10 and **11-12.

The same reasoning must apply in this case where it is undisputed, as the

Administrative Law Judge found and the Commission adopted and approved:

"The evidence indicates that, in addition to submitted two requests for disability leave, Lind timely submitted leave of absence slips and a doctor's note for the days in which Lind was absent from work. The evidence indicates that Lind had approximately six days of alternate benefit time that he could have used towards his absences from work. Having met these three criteria, the DOC should have authorized Lind's use of alternate benefit time for the days he was absent from work." (See Exhibit 3, Report of ALJ at p. 4.)

39

For any of these three separate reasons, summary judgment is appropriate in plaintiff's favor. Rick properly invoked his need for FMLA leave; even if the August 14, 2003 Physician Statement was not adequate, it is undisputed the Department did not allow him 15 calendar days to cure; and, finally, it is undisputed by express admission of the Department's witnesses that it had in its possession on October 1, 2003 a sufficient certification to satisfy the statute before the discipline took place. Accordingly, summary judgment is appropriate because it is undisputed that: (1) Rick Lind was eligible for the FMLA protections; (2) the DOC is covered by the FMLA; and (3) Rick was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) the DOC denied him FMLA benefits to which he was entitled by terminating him without providing him any FMLA benefits.

WHEREFORE, plaintiff respectfully asks this court to enter Summary Judgment in favor of plaintiff on liability and order trial on the issue of damages only.

Respectfully submitted,

RICK LIND, Plaintiff

By: /s/ Stephen T. Fieweger

For:
KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Plaintiff
1000 - 36th Avenue
P.O. Box 950
Moline, IL 61266-0950
Telephone: 309-797-3000
Fax: 309-797-2167
Email: sfieweger@katzlawfirm.com

40

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2007, I electronically filed **Plaintiff's Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

>        Sarah R. Kerley
>        Assistant Attorney General
>        500 South Second Street
>        Springfield, IL 62706
>        Fax:  217-524-5091

and I hereby certify that on February 2, 2007, I mailed by United States Postal Service, the document(s) to the following non-registered participant(s).:  None.

>            RICK LIND, Plaintiff
>
>            By: /s/ Stephen T. Fieweger

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)(2)

The undersigned certifies pursuant to Local Rule 7.1(B)(2) that Plaintiff's Motion for Summary Judgment contains fewer than 7,000 words [The counting feature on plaintiff's Counsel's word processing package (Word 2000) counted 5,826 words.]   (This includes the Introduction and Argument.)

>            /s/Stephen T. Fieweger

s:\wp\worddoc\11260001.27M