**E-FILED**
Friday, 02 February, 2007  03:33:26 PM
Clerk, U.S. District Court, ILCD

ILLINOIS DEPARTMENT OF CORRECTIONS
**Personnel Action Form (Decentralized Actions)**

Name: *Rick S. Lind*                                    SSN: *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*

Position Title: *Correctional Officer*                 Position #: *09625-29-91-310-12-01*

Division/Bureau: *Operations IDOC*           Facility: *East Moline Corr. Ctr.*

Location (County): *Rock Island*            Paycode: *29-163*          PIN#

Bargaining Unit #/MC: *RC-006*                    Effective Date: *07-24-03*

Creditable Service Date changes as a result of the following action: ☐ No  ☒ Yes, From _____ To _____

---

**Complete appropriate information below.**

**Action:**
- ☐ Merit Compensation Review:   (BA_____)            $_____  To  $_____
- ☐ Superior Performance Increase:                       $_____  To  $_____
- ☐ Appropriation # Change:   From _____                 To  _____
- ☐ Full Time/Part Time Change
- ☐ Job Assignment in accordance with AFSCME contract    (BA _100_)
- ☒ Leave of Absence (type of leave: *Non-Serv. Con. Disability*   )     (BA _066_)
- ☐ Leave Return/Expired (change creditable service date above): Leave From: _____ To: _____   (BA _____)
- ☐ Separation (reason: _____)   (BA _____)

---

**Discipline:**
- ☐ Suspension of 30 Days or Less (Specify Number of Days): _____
- ☐ Suspension Pending Discharge
- ☐ Return from Suspension (change creditable service date above) Suspended From: _____ To: _____

---

**Remarks:** (Provide information required in the CMS Personnel Transactions Manual, such as number of days on leave, etc. Attach an additional sheet if necessary.)

---

**Note:** Ensure all required documentation is attached prior to mailing to Central Personnel Office.

**Approvals and Signatures**

1. Employee: _____    2. Originating Supervisor: _____

3. Chief Administrative Officer: _____    4. Chief or Deputy Director: _____

5. Associate Director (if applicable): _____    6. Director: _____

**Central Personnel Office** staff initials when entered in system: _____

Distribution: White-Central Personnel File; Canary-Facility; Pink-Payroll          Printed on Recycled Paper     (002)
                                                                                                (C 2)

**EXHIBIT**
1

# PHYSICIAN'S STATEMENT

## AUTHORIZATION FOR DISABILITY LEAVE AND RETURN TO WORK AUTHORIZATION

Name of Patient (full): **Rick Lind**  Date of Birth: **9-19-53**  Soc. Sec. Number **360488440**

Present Address—Street or Rural Route: **401 Main Street**

City: **Erie**  State: **Illinois**  Zip Code: **61252**

Employed by State of Illinois: _____
(Agency, Board, Commission, Department)

Facility: _____  Address: _____

COMPREHENSIVE MEDICAL INFORMATION IS REQUIRED IN ORDER TO EVALUATE THE EMPLOYEE'S CLAIM FOR A DISABILITY LEAVE OF ABSENCE OR SUBSEQUENT RETURN TO WORK.

## DIAGNOSIS (including any complications):

(a) Date of last examination:  Month: **7**  Day: **30**  19 **2003**

(b) Diagnosis including any complications: **Cervical subluxation, headaches, thoracic subluxation, muscle spasms, lumbar subluxation and pelvic sub.**

**His headache complaint is aggravated by stress, cold weather. These problems date back to a major auto accident in 1980.**

(c) Subjective symptoms: **Patient complains of severe cervical pain with movement, severe headaches, stiff and sore in mid and low back. Not able to sleep, poor concentration and just feels terrible**

(d) Objective findings (including information derived from x-rays, EKG's, laboratory data and any clinical findings): **Poor cervical range of motion with inflamation and very tense and tender. Cervical and thoracic muscles. Patient appears very fatigued and down. Decreased lumbo-pelvic range of motion with mild inflamation.**

## DATES OF TREATMENT:

) Date of first visit:  Month: **7**  Day: **30**  19 **2003**
) Date of last visit:  Month: _____  Day: _____  19 _____  **still treating.**
) Frequency:  Weekly ☒  Monthly ☐  Other ☐ — (Please specify): _____

## TREATMENT:

Please describe treatment including any surgery and/or medication prescribed: **Chiropractic adjustments, home care, ice theraphy, rest, active care, MD treatment.**

Will treatment substantially improve function and employability?  Yes ☒  No ☐  If yes, specify: **His spinal function has improved some and his headaches have improved some.**

### IMPORTANT NOTICE

This state agency is requesting disclosure of information that is necessary to accomplish the statutory purpose as outlined under Chp. 127, 63b, 108c(2). Disclosure of this information is VOLUNTARY. This form has been approved by the State Forms Management Center.

9/E2)  IL401-0384

**EXHIBIT**

**2**

PROGRESS: (Please check appropriate box provided below):
) The patient has:   Recovered ☐     Improved ☐     Remained unchanged ☐     Retrogressed ☐
) The patient is:    Ambulatory ☒    House confined ☐    Bed confined ☐    Hospital confined ☐
) Has the patient been hospital confined because of current condition?    Yes ☐    No ☒
   If yes, give name and address of hospital: _____

Confined from:    Month_____    Day_____ 19_____    through    Month _____

[stamp: OCT 2003 E.M.C.C. WARDEN OFFICE]

LIMITATION: (If there is a limitation, check appropriate box and describe below):
_nding ☐    Climbing ☐    Bending ☐    Use of hands ☐    Sitting ☐    Walking ☐    Stooping ☐
_ting ☐    Psychological ☐    Other ☒    (Please specify): Looking down, stress, cold weather

PHYSICAL IMPAIRMENT: (*As defined in Federal Dictionary of Occupational Titles):
CLASS 1 —   No limitation of functional capacity; capable of heavy work*  No restrictions (0-10%)
CLASS 2 —   Medium manual activity* (15-30%)
CLASS 3 —   Slight limitation of functional capacity; capable of light work* (35-55%)
CLASS 4 —   Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity (60-70%)
CLASS 5 —   Severe limitation of functional capacity; incapable of minimal (sedentary*) activity (75-100%)
REMARKS  Severe headaches - impaired judgement and reaction to situations.

EXTENT OF DISABILITY:

| | From Any Occupation | | | From Patient's Regular Occupation | | |
|---|---|---|---|---|---|---|
| In your opinion is patient now temporarily totally disabled? | Yes ☒ | | No ☐ | Yes ☒ | | No ☐ |
| | MONTH | DAY | YEAR 19 | MONTH | DAY | YEAR 19 |
| If no, when was patient able to go to work? | MONTH 8 | DAY 7 | YEAR 19 2003 | MONTH | DAY | YEAR 19 |
| If yes, when do you think patient will be able to resume any work? | (Approximate Date) | | | Indefinite ☒ | | Never ☐ |
| In your opinion is patient permanently and totally disabled for employment? | Yes ☐ | | No ☒ | Yes ☐ | | No ☒ |

If answer to (d) is "yes", please explain.
_____
_____
_____
_____

REMARKS:
This episode is a severe irritation of tissue damaged in a major auto accident in 1980. He sustained a severe concussion and a T12 compression fracture, scar tissue is susceptible to episodes of flare up from activities of daily living and stress, and exposure to the cold.

Physician's Signature: _____    Degree: D.C.    Date: 7/30/03

TYPE OR PRINT THE FOLLOWING INFORMATION:

Physician's Name: Kevin L. Freebern, D.C.

Office Street Address: 918 - 16th Avenue

East Moline    State: Illinois    Zip Code: 61244    Phone Number: 309-752-0750

NOTES: You are responsible for having this form completed and returned to the appropriate person within your agency within
_ts established by your agency. Your failure to comply may result in termination of your disability leave.

BEFORE THE CIVIL SERVICE COMMISSION, STATE OF ILLINOIS

ILLINOIS DEPARTMENT OF )
CORRECTIONS, )
)
        Petitioner, )    CASE NO. DA-71-04
)
    v. )
)
RICK LIND, )
)
        Respondent. )

## FINDINGS AND DECISION OF THE COMMISSION

THE UNDERSIGNED, HAVING READ THE DECISION OF THE ADMINISTRATIVE LAW JUDGE DATED JANUARY 7, 2005 HEREBY ADOPT SAID DECISION AND HEREBY CERTIFY IT TO THE DIRECTOR OF THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, STATE OF ILLINOIS, FOR ENFORCEMENT.

IT IS HEREBY DETERMINED THAT THE WRITTEN CHARGES FOR DISCHARGE APPROVED BY THE DIRECTOR OF THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, STATE OF ILLINOIS, HAVE NOT BEEN PROVEN AND DO NOT WARRANT THE DISCHARGE OF THE RESPONDENT, RICK LIND, FROM HIS POSITION OF CERTIFIED CORRECTIONAL OFFICER WITH THE DEPARTMENT OF CORRECTIONS, STATE OF ILLINOIS. THIS IS A FINAL ADMINISTRATIVE DECISION SUBJECT TO THE ADMINISTRATIVE REVIEW ACT.

 

_____      _____
Chris Kolker, Chairman           George E. Richards, Commissioner

_____      _____
Raymond W. Ewell, Commissioner     Barbara J. Peterson, Commissioner

_____
Betty Bukraba, Commissioner

ENTERED THIS 20TH DAY
OF JANUARY 2005.


EXHIBIT
3

# BEFORE THE CIVIL SERVICE COMMISSION, STATE OF ILLINOIS

ILLINOIS DEPARTMENT OF }
CORRECTIONS, }
                   }
           Petitioner, }
     vs.               }    No. DA-71-04
                   }
RICK LIND, }
                   }   Administrative Law Judge:
         Respondent. } *Andrew C. Barris*

---

REPRESENTING PETITIONER:    Honorable Lisa Madigan, Illinois Attorney General, 100 West Randolph Street, Suite 1300, Chicago, Illinois 60601; Mr. Kevin Lovellette and Ms. Jill Cole, Assistant Attorneys General

REPRESENTING RESPONDENT:  Mr. Stephen T. Fieweger, Attorney at Law, 200 Plaza Office Building, Rock Island, Illinois 61204

---

## PROCEEDINGS

This is the Respondent Rick Lind's ("Lind") appeal of his discharge from the position of Correctional Officer at the Department of Corrections ("DOC") effective November 10, 2003. A copy of the Amended Charges is attached. A written request for hearing was made by Lind within 15 days and a hearing was scheduled within 30 days. A hearing on this matter was held February 27, 2004. On July 2, 2004, the Administrative Law Judge entered a recommended decision reinstating Lind to his position at the Department of Corrections. A copy of that recommended decision is attached and incorporated to the extent not inconsistent with this recommended decision. On July 15, 2004, the Civil Service Commission rejected the Administrative Law Judge's decision to reinstate the Respondent and remanded this matter to the Administrative Law Judge for the purpose of further

proceedings including the taking of additional evidence. Tim Stump testified at a hearing on September 16, 2004.

## FINDINGS OF FACT

1. Tim Stump ("Stump") testified that he was the Shift Commander for the second shift at the East Moline Correctional Center in 2003.

2. Stump testified that he supervised approximately 70 staff members and 1100 inmates.

3. Stump testified that one of his duties as Shift Commander involved working with time sheets for the Correctional Officers.

4. Stump testified that he prepared a document titled "Notification of Proof Status" on April 17, 2003.

5. Stump testified that he served the document on Lind on May 30, 2003 but that Lind refused to sign for the document.

6. Stump testified that proof status would have lasted for 90 days from April 17, 2003.

7. Stump testified that he did not have a meeting with Lind to discuss Lind's attendance prior to placing him on proof status.

8. Stump testified that a union representative was not present when Stump served the Notification of Proof Status on Lind.

## CONCLUSIONS OF LAW

1. Section 1.170 (a) of the Rules of the Civil Service Commission sets forth the standard of cause for discharge appeals and states:

Cause for discharge consists of some substantial shortcoming which renders the employee's continuance in his position in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for the employee no longer holding the position. In determining the appropriate penalty for an offense which the employee is found guilty, the Commission shall consider the employee's performance record and the employee's length of continuous service unless the offense would warrant immediate discharge.

2. Section 1.232 of the Rules of the Civil Service Commission states:

    a. The proponent of any matter asserted shall have the burden of proof to establish by a preponderance of evidence that the matter asserted is more probably true than not true.

    b. When a party has the burden of proof and establishes the matter by the required quantity of evidence, the party has made a prima facie case, and the burden of disproving the matter asserted goes to the opposing party by the same quantity of evidence.

3. Institutional Directive (I.D.) 03.01.301, II, F, 6 (c) provides in pertinent part, "Prior to placing an employee on proof status, the supervisor shall meet with the employee to discuss the attendance record."

4. Institutional Directive 03.01.301, II, F, 3 states:

Authorization to use other benefit time, or if none is available, authorized docks shall be granted under the following criteria when sick time has been exhausted:

    a. The employee has not been on proof status within the previous three (3) months, unless the Warden approves use of such time.

    b. Proper medical certification is provided.

    c. Use of authorized dock time under these circumstances is limited to (5) days within a (12) month period, unless approval for more time is granted by the Warden.

5. The Petitioner has not established by a preponderance of the evidence that Lind's conduct violated I.D. 03.01.301.

6. I.D. 03.01.301, II, F, 6 (c) requires a supervisor to meet with an employee prior to the employee being placed on proof status. In this matter, Stump testified that he did not meet with Lind to discuss Lind's attendance record prior to his placement on proof status. In fact, Stump did not meet with Lind to discuss his attendance record until more than a month and a half *after* he placed Lind on proof status. For this reason, it cannot be claimed that Lind was effectively placed on proof status according to I.D. 03.01.301.

7. According to I.D. 03.01.301, II, F, 3, an employee's request to use alternative benefit time or authorized docks shall be granted if the following criteria are met: 1. The employee has not been placed on proof status within the three previous months. 2. The employee provides proper medical certification. 3. The use of authorized dock time is limited to five days within a twelve-month period. Lind met these criteria to use alternative benefit time. As previously discussed, the testimony of Stump indicates that Lind was not effectively placed on proof status three months prior to his absence from work. The evidence indicates that, in addition to submitting two requests for disability leave, Lind timely submitted leave of absence slips and a doctor's note for the days in which Lind was absent from work. The evidence indicates that Lind had approximately 6 days of alternative benefit time that he could have used towards his absences from work. Having met these three criteria, the DOC should have authorized Lind's use of alternative benefit time for the days he was absent from work. Therefore, the DOC is not allowed to use those days in calculating whether Lind reached the termination level under the affirmative attendance policy. Without those days, Lind has not reached the termination threshold.

8. For these reasons, the Petitioner failed to establish by a preponderance of the evidence that Lind's absences were in violation of A.D. 03.01.301.

## **RECOMMENDED DECISION**

It is the recommended decision that the written charges approved by the Director of Central Management Services, State of Illinois have not been proven as they relate to the above charges and Lind should be reinstated to his position at the Department of Corrections.


Andrew C. Barris
Administrative Law Judge

Entered this 7th day of
January, 2005

ENDED CHARGES

**Rick Lind**

**Discharge for Cause on November 10, 2003**

Rick Lind, employed by the Illinois Department of Corrections at East Moline Correctional Center in the position of Correctional Officer, is discharged for cause because of the following circumstances:

> Mr. Lind called in sick to the facility on July 24, 25, 28, 29, 30, 31, 2003 and August 1, 4, 5, 6, 2003. Mr. Lind did not report to his assigned shifts on these dates. Mr. Lind did not have sufficient time on the books to cover his absence.

These absences are unauthorized and are in violation of A.D. 03.01.301 Affirmative Attendance.

A review of Mr. Lind's personnel file reveals the following attendance-related discipline:

| | | |
|---|---|---|
| Unauthorized Absence | 4/28/00 | 1-Day Suspension |
| Unauthorized Absence | 6/11/01 | 3-Day Suspension |

Mr. Lind was placed on Suspension Pending Discharge effective October 17, 2003.

Rick Lind's absences in the month of July and August, 2003 bring him up to and beyond his tenth offense against the Petitioner's Attendance Directive. Therefore, immediate discharge is warranted.

_____
Director of Central Management Services

_Feb. 26, 2004_
Date

Pet
Ex. 1

BEFORE THE CIVIL SERVICE COMMISSION, STATE OF ILLINOIS

Illinois Department of Corrections,

                                Petitioner

          vs.                        No. DA 71 04

RICK LIND                           **Administrative Law Judge:**

                          Respondent         *Leonard F. Sacks*

| | |
|---|---|
| REPRESENTING PETITIONER: | Honorable Lisa Madigan, Illinois Attorney General, 100 West Randolph Street, 13th Floor, Chicago, Illinois 60601, Mr. Kevin Lovellette, Ms. Jill Cole, Assistant Attorneys General |
| REPRESENTING RESPONDENT: | Mr. Stephen T. Fieweger, Attorney at Law, 200 Plaza Office Building, Rock Island, IL 61204 |

## CHARGES

1.    Rick Lind, employed by the Illinois Department of Corrections at East Moline Correctional Center in the position of Correctional Officer, is discharged for cause because of the following circumstances:

    a.    Mr. Lind called in sick to the facility on July 24, 25, 28, 29, 30, 31, 2003, and August 1, 4, 5, 6, 2003. Mr. Lind did not report to his assigned shifts on these dates. Mr. Lind did not have sufficient time on the books to cover his absence.

2.    These absences are unauthorized and are in violation of Administrative Directive 03.01.301 Affirmative Attendance.

3.    A review of Mr. Lind's personnel file reveals the following attendance-related discipline:

| | | |
|---|---|---|
| Unauthorized Absence | 4/28/00 | 1-Day Suspension |
| Unauthorized Absence | 6/11/01 | 3-Day Suspension |

4.    Mr. Lind was placed on Suspension Pending Discharge effective October 17, 2003.

5.    Rick Lind's absences in the month of July and August 2003 bring him up to and beyond his tenth offense against the Petitioner's Attendance Directive.

## JURISDICTION

1.    Rick Lind is employed by the Illinois Department of Corrections as a certified Correctional Officer.    His employment began November 12, 1984.    His termination became effective November 10, 2003.

2.    The charges in this case are specifically dated November 10, 2003.

3.    Mr. Lind's appeal was filed timely on November 17, 2003.

4.    There is no issue of jurisdiction of the Civil Service Commission.

## FACTS

1.    The employer, during the period of time in question, had an affirmative attendance policy that is attached hereto and is incorporated by reference herein.    The policy consists of 8 pages and was admitted into evidence as Joint Exhibit 1.    It is a document that is judicially noticed by the Judge.

2.    The amended charges as set forth above were admitted into evidence as Petitioner's Exhibit 1.

3.    The first witness was Todd Franzen.    The witness introduced himself as a 13-year employee with the Department of Corrections, who is currently employed as the Business Administrator with the East Moline Correctional Center.    His duties include budget, timekeeping and payroll at that institution.    In that capacity he is familiar with the attendance record of Rick Lind.

4.    According to Mr. Lind's time sheets, he was docked for the 24th, 25th, 28th, 29th, 30 and 31st of July; August 1st, 4th, 5th and 6th. On all of those days he was scheduled to work and he did not.

5.    The witness stated that on those dates Mr. Lind did not have accumulated sick time on the books. According to the witness, a medical leave of absence starts with a form known as a CMS 95 that has gone through the Warden's Office or the Personnel Office. The employee must fill that form out. A physician makes a statement and then the form is returned to the facility. There were no such CMS forms submitted.

6.    The affirmative attendance policy in evidence as Joint Exhibit 1 was in effect at the dates in question. If that policy is violated, the witness stated, such a violation is detrimental to the facility and the Department because the security of the inmates, the public, and the other employees is in danger. The schedule of guards is arranged to provide safety at the most needed times, and when there is not a full complement of guards, that is potentially dangerous.

7.    Upon cross-examination by Mr. Fieweger, the witness identified Respondent's Exhibit 1 as a Request for a Leave of Absence Non-Service Connected. That form is obtained from the "Human Personnel" Office.

8.    The witness understands that Mr. Lind was seeking a non-service related leave. He did that on or about July 24, 2003. Pursuant to the Union Contract, under Article 19, Section 21, Employees who are out of sick time can apply for non-service leaves of absences. They apply to the Warden's Office.

9.    On further cross-examination the witness states that he was not part of the disciplinary hearing held on September 8, 2003.

10.    On re-direct examination, looking at Respondent's Exhibit 4, the date that Mr. Lind actually signed it is unknown to the witness. The witness further stated that Mr. Lind was placed on "proof status" April 17, 2003. The witness was able to ascertain that Mr. Lind was on proof status based on the contents of the document.

11.    On re-cross examination, it is pointed out that the document is dated April 17, 2003, but was signed by the Captain on May 30, 2003.

12.    On further cross-examination, the witness states that when placed on proof status, the employee is permitted to have Union representation. Captain Stump was the person who signed putting Mr. Lind on proof status on May 30, 2003. That document shows that Mr. Lind refused to sign (Respondent's Exhibit 4).

13.    Upon examination by the Judge, the employee states that "proof status" means that when you call in for sick time you need a doctor's permission statement. There is a rule that changes your status from just being a sick person to a person who is required to have evidence that they are sick. There are people in authority who are authorized to place a party on "proof status". Normally proof status comes about because of prior questions as to whether or not the employee was actually sick.

14.    Under the supervision of the Warden or his assistants, the immediate supervisor of the employee has the authority to place the employee on proof status. The Union is required to be present when the employee is placed on proof status to determine on their own if proof status is appropriate. If it is inappropriate then it is a subject of grievance.

15.    The employee cannot grieve on his own. The Union must initiate the grievance. If someone places an employee on proof status and a Union representative is

4

not present, then the timeliness of the grievance could be affected. If the Union is unaware of the grievance and the cause for it, then it is conceivable that the grievance could be denied because of timeliness.

16.    On further cross-examination, it is pointed out that Administrative Directive 03.01.301, subparagraph (f) contains proof status requirements. Under paragraph (c) of Section F, employees are required to be counseled by the supervisor concerning their attendance problem before a decision is made to place them on proof status. There is no documentation in the file to show that Mr. Lind was ever counseled by Captain Stump. There are no documents in Mr. Lind's file that he was notified in writing of his need to apply for a medical leave of absence or face discipline. Under Section F, paragraph 7, as described aforesaid, employees shall be advised in writing of the need to apply for a leave of absence or face discipline.

17.    Under Section F, paragraph 11, employees are required to be referred to the Employee Assistance Program after discipline has been imposed. There is no documentation showing Mr. Lind to have been referred to management to the Employee Assistance Program.

18.    On re-direct, it appears as though Mr. Lind refused to sign acknowledgement of being put on proof status. On further cross, if a Union representative would have been present, the Union representative would have initialed the document, even if the employee refuses to sign. That is so they can measure the time for grievances. Whereupon the Petitioner rested.

19.    The Respondent then called Rick Lind as a witness in his own case. He testified that he lives about 20 miles from the East Moline Correctional Center. He states

that he has been employed at the Center for 19 ½ years, having begun his employment on November 12, 1984. He states that he is a Correctional Officer.

20.    The witness states that he has a degenerating disk in his lower back due to an automobile accident in 1980. Before the pending discipline he used his allotted sick time. He was having health problems in July of 2003 related to the automobile accident. He testified that he tried to secure a leave of absence due to his medical condition. He called in sick and requested a leave of absence on Form CMS 95.

21.    The form was obtained from a Pam Verstreate at the Warden's Office. She filled in the date of July 24th. The witness states that at that time he was under his doctor's care and was referred to a chiropractor. His primary physician, the chiropractor, was Dr. Kevin Freebern. When he requested the leave of absence on July 24 he requested a form that the doctor fills out. He had that form filled out and brought back to Pam on July 30, 2003. That is the date that Dr. Freebern signed it. He delivered it in person to Pam. At the time he was applying for this leave of absence he had no prior discipline.

22.    In May of 2003 he was referred for discipline. No one from the Warden's Office informed him that his request for disability leave was denied, nor did anyone inform him that Dr Freebern's Physician's Statement was defective.

23.    On September 8, 2003, he had a pre-disciplinary hearing. Respondent's Exhibit 4 was presented at the pre-disciplinary hearing. It is also called a pre-termination hearing.

24.    The witness claims he was not informed in writing for his need to apply for leave of absence or face discipline, or informed before the pre-disciplinary hearing

6

that his documentation was defective. He was never given a notice referring him to the Employer Assistance Program.

25.    At the September 8th hearing he was not informed that his paperwork was rejected. The witness states he was not required to submit a completed Physician's Statement under the CMS Form in order to request alternative time off. The witness states that if you have time on the books, and you are sick and you run out of sick time, you are allowed to request alternative time off. His request for alternative time was Exhibit 7. Alternative time is vacation time, holiday time, comp time. You can use those days if you are not on proof status. The witness states that when he requested alternative time he had some personal comp or vacation time left.    The witness submitted several physician statements.    Another one was Exhibit 6, which was a statement from Dr. Freebern. He did that because he wanted to make sure he wasn't in any trouble. He states that by August 14, 2003, he had not heard with regard to his requests of July 30, 2003.

26.    The witness states that he did not receive Exhibit 8, which is a notice of a hearing for violating the Affirmative Attendance Policies. The witness claims he has never been discharged and has never been discharged within 45 days of September 8th. The witness claims that he is a Union Representative and has assisted employees in dealing with management, and has requested leaves for medical reasons when people have exhausted their sick time. An issue arose in the testimony about the past practice of considering late filed requests for leave of absence or documentation.

27.    On cross-examination. Petitioner's Exhibit 4 was a memo from the acting Warden stating that the CMS form submitted by the witness was defective. He states he

submitted two CMS forms. The second was submitted because he didn't hear anything on the first. The witness further states that he didn't know anything about being put on proof status and that if it happened he was not aware of it.

28.    He signed a Notice of Appeal appealing his discharge dated November 8th. He prepared that paper himself. The witness claims he didn't know he was appealing his discharge, however, and believed that he was only suspended for 30 days.

29.    On re-direct examination the witness states that he did receive a November 10 Discharge for Cause document. The documents relevant to his discharge were admitted as Exhibits 16 and 17.

30.    The next witness was a Jeffrey Papish, who is a Union person at the East Moline Correctional Center. He has been in the Department of Corrections for 20 years. The witness states that as a Union Representative he attempted to assist Mr. Lind in obtaining alternative leave time when Mr. Lind's sick time had been exhausted in the year of 2003, and that it has been the practice of Eastern Correctional Center that the request for alternative time is taken after the time has already been taken off. The alternative time is applicable even to people on proof status and usually it is approved.

31.    Mr. Lind always submitted his alternative time requests with doctor's slips. At the pre-disciplinary hearing on September 8, there was a question as to whether or not Mr. Lind was on proof status. The Union was never notified that Mr. Lind was on proof status. If he was, he was never notified, nor was the Union with regard to his rights to apply for a leave of absence.

33.    The next witness called was a Randy Sanders, who is also employed at East Moline as a Correctional Officer. He began there in 1988. He is a Union Steward.

At the pre-disciplinary hearing it was contested that Mr. Lind was on proof status. There was nothing in Mr. Lind's file. No writing in his file as to when or how he was placed on proof status and that he needed to seek a leave of absence, nor was there any indication that his paperwork was improperly submitted. The witness states that he reviewed Mr. Lind's file and could find no notice within 45 days that Mr. Lind had been discharged.

## ANALYSIS

1.    The Petitioner claims that Mr. Lind violated the Affirmative Attendance Policy, which is before the Commission as Joint Exhibit No. 1. According to the Petitioner the evidence supports a conclusion that Mr. Lind was not at work for 10 days in a row and did not have accumulated time to cover his absences.

2.    Petitioner further claims that the paperwork Mr. Lind did submit was inadequate and was not timely.

3.    The Respondent claims that the Petitioner violated the Collective Bargaining Agreement and the Affirmative Attendance Policy prior to and in the course of the discharge proceedings and that there has been a past practice to permit the late filing of documents to support an absence.

4.    The Petitioner counters that the Commission does not have Jurisdiction to determine if there is a violation of the collective bargaining agreement and therefore, those potential defenses fail. The Petitioner cites the case of _O'Keefe vs. Illinois State Police_, **313 Ill. App. 3d 817**. The case is attached for the Commission.

5.    I find that case to be persuasive on the question of whether or not the Commission has authority to interpret the claimed contract violations. Therefore, without deciding the merits of whether the employer has violated the agreement I find that the

Commission lacks authority or jurisdiction to determine whether the claimed contract violations provide the Respondent with a defense.

6.    The Petitioner has proven that the Respondent was absent for more than ten days and if the Respondent was on "proof status' he did not supply timely or appropriate medical evidence to support his absences.

7.    It appears that Mr. Lind's file shows that on April 17, 2003 he was placed on proof status. The troubling aspect of that is that Captain Stump, a person authorized to place the Respondent on proof status, did not sign that document until May 30, 2003 and it is very difficult from the evidence to determine when, if at all, Mr. Lind knew that he was on proof status. The document, Respondent's Exhibit 4, states where Respondent's signature is called for, "Refused to Sign." According to the Union Steward, Mr. Sanders, there was nothing in Mr. Lind's file to verify or confirm that Mr. Lind was indeed notified that he was on proof status, or when he refused to sign. Mr. Lind also testified that he was not notified of being placed on proof status.

8.    In addition, the Union was not notified that Mr. Lind was placed on proof status. The Union must be notified of a person being placed on "proof status". The purpose of that requirement appears to be to protect certain grievance rights and in particular to insure that if there is to be a grievance, which only the Union can file, it is filed in a timely fashion. Jeffery Papish, a Union Representative, testified that the Union never received a notification that Mr. Lind was placed on proof status.

9.    The burden of proof is on the Petitioner. On the one hand there is a document in the Respondent's file showing he was placed on proof status, which at some time he is alleged to have refused to sign. There appears to be no evidence, however,

10

showing when notice to Mr. Lind or to the Union occurred, or when, prior to or on July 24th, 2003 and the 9 succeeding days that Mr. Lind knew he was on proof status.

## CONCLUSION AND RECOMMENDATION

It is axiomatic that if Mr. Lind was not notified of his status prior to the days when he was absent then he cannot be disciplined as is proposed by the Petitioner. Petitioner has fallen short in their evidence. It might simply have been proven if Captain Stump had testified. He did not.

Therefore, I recommend that he be reinstated.

*Leonard F. Sacks*

Leonard F. Sacks
Administrative Law Judge

Entered this 2nd day
of July, 2004.