E-FILED
Friday, 02 March, 2007 04:41:13 PM
Clerk, U.S. District Court, ILCD

```
 1            UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS
 2              ROCK ISLAND DIVISION

 3

 4

 5  RICK LIND,            )
                          )
 6       Plaintiff,       )
                          )
 7  vs.                   )  No. 4:05-CV-4959
                          )
 8  STATE OF ILLINOIS,    )
    DEPARTMENT OF CORRECTIONS,)
 9                        )
         Defendant.       )
10  _____)

11

12

13          DEPOSITION OF RICK S. LIND,
    taken before Heidi Krafka, Certified Shorthand Reporter
14  of the States of Iowa and Illinois, at Katz, Huntoon &
    Fieweger, 1000 36th Avenue, Moline, Illinois, on
15  Thursday, the 18th day of January, 2007, commencing at
    12:48 p.m., pursuant to the within stipulation.
16

17

18

19

20

21

22
```



DEFENDANT'S EXHIBIT

23

24          Kelly Reporting
            (309) 788-3630
25

4

1       RICK S. LIND,

2 was called as a witness and, having first been duly

3 sworn to testify the truth, the whole truth, and

4 nothing but the truth, was examined and testified as

5 follows:

6            EXAMINATION

7 BY MS. KERLEY:

8 Q. Good afternoon, Mr. Lind. Good to see you again.

9    My name is Sarah Kerley. I represent the

10   Department of Corrections in a lawsuit that you

11   filed against it. Can you please state your name

12   for the record.

13 A. Rick S. Lind.

14 Q. Mr. Lind, have you ever had your deposition taken

15   before?

16 A. No.

17 Q. I'm going to tell you a few rules to hopefully get

18   your agreement so this will go smoothly. If you do

19   not understand a question that I've asked you,

20   please stop me and tell me that you don't

21  understand. Is that agreeable?

22  A. Yes.

23  Q. If you answer a question, I will assume that you

24   have understood the question as I've asked it. Is

25   that agreeable?

Kelly Reporting    (309) 788-3630

5

1  A. Yes.

2  Q. Please, as I know that you have recognized from

3   watching the last couple depositions, it's

4   important that you answer my questions verbally and

5   with yes, no, or another appropriate response. I

6   would ask that you refrain from using the terms

7   uh-huh or huh-uh. They're very difficult to

8   determine what you're actually meaning when we get

9   the transcript back. Is that agreeable?

10 A. Yes.

11 Q. And finally, I will work very hard to allow you to

12  finish your answer before I ask you another

13  question, and I ask in return that you allow me to

14  finish my question before you begin your answer.

15  Is that agreeable?

16 A. Yes.

17 Q. Mr. Lind, you're currently employed by the

18    Department of Corrections as a correctional

19    officer; is that correct?

20 A. Yes.

21 Q. And did you have that same employer and title in

22    July 2003?

23 A. Yes.

24 Q. As a correctional officer are you a member of a

25    union?

12

1  Q. In -- I understand from this litigation that you
2     contend that in July or August of 2003 you
3     requested a leave of absence from Pam Verstraete;
4     is that accurate?
5  A. That's correct.
6  Q. Where were you when you requested a leave of
7     absence?
8  A. In the warden's office.
9  Q. Did you do it in writing or orally?
10 A. Both.
11 Q. Did you -- With respect to writing, what -- how did
12    you provide a request for leave of absence in
13    writing?
14 A. I went to my physician and got a slip stating that
15    I was disabled from one period to another.
16         MS. KERLEY: Off the record.
17         (A discussion was held off the record.)
18         MS. KERLEY: We can go back on the
19    record. Let the record reflect that after an
20    off-the-record conversation Mr. Fieweger and I have

21    stipulated to the use of Warden Jungwirth's

22    exhibits in Mr. Lind's deposition, and let the

23    record also reflect that Lind Exhibit 1 is

24    identical to Warden Jungwirth Exhibit 2.

25  BY MS. KERLEY:

Kelly Reporting    (309) 788-3630

13

1  Q. Mr. Lind, I'm going to put some exhibits in front

2     of you that you just saw used with Mr. Jungwirth in

3     his deposition, and I'm going to ask you to take a

4     look at Exhibit 7. Do you see that document?

5  A. Yes, I do.

6  Q. Is that what you were just referring to when you

7     said you in writing requested a leave of absence?

8  A. That's correct.

9  Q. Did you in any other manner request a leave of

10    absence in writing from the Department of

11    Corrections or the -- or specifically East Moline

12    Correctional Center?

13 A. For these dates?

14 Q. Yes.

15 A. Yes, I did.

16 Q. And how is that?

17  A. That was -- This was followed by a CMS-95.

18  Q. Okay. And the CMS-95 was completed by your

19     physician?

20  A. That's correct.

21  Q. Or your chiropractor?

22  A. Yes.

23  Q. Dr. Freebern?

24  A. Yes.

25  Q. As was Exhibit 7; correct?

        Kelly Reporting    (309) 788-3630

14

1  A. Yes.

2  Q. Did you -- Other than providing a CMS-95 form and

3     Exhibit 7, did you request -- in any other way

4     request in writing a leave of absence for

5     July 24th, 2003, to August 7th, 2003?

6  A. I requested alternative time off first.

7  Q. And when you are -- Direct your attention to

8     Exhibit 8, which I will tell you is four pages

9     long. Mr. Lind, I'm showing you a copy of

10    Exhibit 8. Are those the requests for alternative

11    benefit time that you're referring to?

12 A. Yes.

13 Q. What kind of benefit time were you requesting in

14    the numerous half slips that are contained in -- or

15    copies that are in Exhibit 8?

16 A. Holiday, vacation, I believe, and doc time.

17 Q. And doc time would be an unpaid absence --

18 A. An authorized doc, yes, sorry. I didn't mean to

19    interrupt.

20 Q. No, that's okay. It's very natural, but thank you

21    for catching yourself.

22       The requests for alternative benefit time, who

23    do they go to?

24 A. That must go to the warden.

17

1  Q. You indicated that you also orally requested leaves

2     of absence; correct?

3  A. Yes.

4  Q. And who did you orally request leave of absence

5     from?

6  A. The personnel department.

7  Q. Who at that time was Pam Verstraete?

8  A. The personnel department I believe was Belinda

9     Richardson.

10 Q. Okay. And is Ms. Richardson -- was she an employee

11    of EMCC?

12 A. Yes.

13 Q. And where was her office?

14 A. Down on the first floor.

15 Q. And what did you tell Ms. Richardson?

16 A. She was a timekeeper, and I told her I would be

17    requesting alternative time and also an LOA.

18 Q. Is Ms. Richard -- is it Richards or Richardson?

19 A. Richardson.

20 Q. Is Ms. Richardson responsible for leaves of

21    absence, processing leaves of absence, or was she

22    in July of 2003?

23  A. She doesn't process them, no.

24  Q. Did you tell Ms. Richardson why you were going to

25     be requesting alternative benefit time and/or a

Kelly Reporting    (309) 788-3630

18

1     leave of absence?

2  A. Yes, it's the employee's responsibility to know how

3     much sick time he has, and I knew I was out of sick

4     time, and I knew the procedure.

5  Q. To the best of your recollection what did you say

6     to her, and what did she say to you in that

7     conversation?

8  A. I told her just what I've already told you, and she

9     said, okay, and I went to the warden's office and

10    requested the CMS-95.

11 Q. And when did you have this conversation with

12    Ms. Richardson and followed by going to the

13    warden's office?

14 A. At some time during this period, during this time

15    off.

16 Q. When you say this time, are you referring --

17 A. It was by phone.

18        MS. KERLEY: I'm sorry. Could you

19    please -- could you read back his response.

20         (The question was read back by the court

21         reporter.)

22  BY MS. KERLEY:

23  Q.  Mr. Lind, you indicated that you spoke to

24      Ms. Richardson, the timekeeper, by telephone?

20

1  Q. Were you in Warden Jungwirth's office or out in
2     Ms. Verstraete's work area?
3  A. Let me clarify. There's a double door, that states
4     warden's office on it. I walked in the first --
5     walked in the double door. That's where I
6     requested the form.
7  Q. All right. As you recall, what did you say to
8     Ms. Verstraete during that conversation?
9  A. I told her that I was -- I needed a CMS-95 and I
10    would be applying for an LOA.
11 Q. What did she say to you?
12 A. Okay.
13 Q. Is that the extent of the conversation, as best you
14    can recall?
15 A. Yes.
16 Q. Did she give you a CMS-95?
17 A. Yes.
18 Q. I'm going to direct your attention to Exhibit 3.
19    You do recognize that document?
20 A. Yes.
21 Q. Do you know when you signed that document?

22  A.  Yes, when I submitted my CMS-95.

23  Q.  And do you know when that was, what day that was?

24  A.  On 7-30-03.

25  Q.  When did your back first start bothering you?

Kelly Reporting    (309) 788-3630

45

1  A. No, unauthorized absences.

2  Q. In violation of the affirmative attendance policy?

3  A. Correct.

4  Q. And the charges also indicated that you were on

5     proof status -- or that the department contended

6     that you were on proof status?

7  A. When I asked my alternative time, I wrote right on

8     my slips not on proof, so I knew I was not on proof

9     status.

10 Q. But the charges informed you that the department

11    held the position that you were on proof status;

12    correct?

13         MR. FIEWEGER: Not whether it was correct

14    or not.

15 Q. That the department had that correction, that the

16    department was telling you that it thought you were

17    on proof status; correct?

18 A. Yes. Yes.

19 Q. And that would have been prior to -- About how long

20    before the ERB hearing would you have gotten notice

21    of the charges?

22  A.  Ten days.

23  Q.  Knowledge this -- Well, sometime from July 2003 to

24      November 2003 did you give Pam Verstraete -- or did

25      you consent to having Pam Verstraete contacting

Kelly Reporting    (309) 788-3630

54

1

2

3

4        CERTIFICATE

5

     I, Heidi Krafka, Certified Shorthand Reporter of
6  the States of Iowa and Illinois, do hereby certify
   that, on the 18th day of January, 2007, at Moline,
7  Illinois, there appeared before me the following-named
   person, to wit, RICK S. LIND, who was by me first duly
8  sworn to testify the truth, the whole truth, and
   nothing but the truth in the above-entitled cause; that
9  I reported in shorthand the testimony of said witness,
   reduced the same to printing under my direction and
10  supervision, and that the foregoing deposition is a
   true record of the testimony given by said witness and
11  of all proceedings had on the taking of said deposition
   at the above time and place.

12

13      I further certify that I am not related to or
   employed by any of the parties to this deposition, and
14  further that I am not a relative or employee of any
   attorney or counsel employed by the parties hereto or
15  financially interested in the action.

16

17
     IN WITNESS WHEREOF, I have set my hand and
18
   seal this _____ day of January, 2007.
19

20

21      _____
     Certified Shorthand Reporter

22              Certified in Iowa and Illinois
                Illinois CSR No. 084-004216
23

24

25

        Kelly Reporting    (309) 788-3630