UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| RICK LIND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - vs- | ) | No. 05-4059 |
| | ) | |
| STATE OF ILLINOIS DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, Illinois Department of Corrections, by and through its attorney, Lisa Madigan, Attorney General for the State of Illinois, and for its Response to Plaintiff's Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, states as follows:

## I. INTRODUCTION

Plaintiff, a Correctional Officer who was employed at the East Moline Correctional Center in 2003, has brought this action alleging the Department of Corrections ("Department") interfered with benefits to which he was entitled pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2600 *et seq.*.  On February 5, 2007, Plaintiff moved for summary judgment, arguing that he had sufficiently notified the Department of his desire to take FMLA-qualifying leave and that the Department interfered with FMLA benefits to which he was entitled in violation of 29 U.S.C. § 2615(a)(1).

Plaintiff is not entitled to summary judgment for one or more of the following reasons: (1) Plaintiff failed to provide notice sufficient to place the Department on notice

-1-

that the requested leave may have been an FMLA-qualifying leave; (2) Plaintiff failed to provide notice as soon as practicable as required by the FMLA; (3) Plaintiff failed to comply with the neutral policies of the Department contained in the collective bargaining agreement; (4) a genuine issue of material fact exists regarding the timeliness of Plaintiff's required medical certifications; and (5) a genuine issue of material fact exists regarding whether the Department denied Plaintiff FMLA benefits to which he was entitled. Accordingly, the Department respectfully requests this honorable Court deny Plaintiff's Motion for Summary Judgment and enter judgment in favor of the Defendant.

## II.  RESPONSE TO STATEMENT OF FACTS

### A.    Undisputed Material Facts

1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 20, 22, 23, 24, 25, 35, 41, 42, 45, 46, 47, 50, 52, 56, 58, 59, 63,  65, 67, 68, 69, 71, 72,

### B.    Disputed Material Facts

**Plaintiff's Discharge**

15.    Plaintiff was suspended, pending discharge, for violation of the Department's proof status, specifically, that Plaintiff failed to provide doctor's slip for his absences on July 24, 25, 28, 29, 30, 301 and August 1, 4, 5, and 6, 2003, within five days of his return to work.  (Exb. A, pp. 70-71).

16.    Plaintiff was discharged, not merely for missing work, but for unauthorized absences due to his violation of the Department's proof status policy.  (Exb. A, pp. 70-71); (Exb. D, p. 45).

57.    Warden Jungwirth was one of the decision makers, rather than the sole decision maker, regarding Plaintiff's discharge.  The discharge was approved by IDOC administrative office and CMS.  (Exb. A, p. 28); (Exb. B, p. 98).

**Medical Certifications**

21.    While it is undisputed that the date August 14, 2003 is written on Exhibit 7, Plaintiff has not provided competent evidence as to when the document was signed.  See Def's Motion to Strike.  Further, two documents bearing the date August 14, 2003 were received by the Department, some weeks apart.  (Exb. B, pp. 88-90)(Exb. C).

37.    Ms. Verstraete testified that the medical certification bearing the date July 30, 2003 was the result of conversations with Dr. Freebern's office in September, 2003.  (Exb. B, pp. 88-90).  Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8) was "followed up" by a CMS medical certification form.  (Exb. D, pp. 12-13).

38.    While it is undisputed that the date July 30, 2003 is typed on Exhibit 2, Plaintiff has not provided competent evidence as to when the document was signed.  See Def's Motion to Strike.   Further, Ms. Verstraete testified that the medical certification bearing the date July 30, 2003 was the result of conversations with Dr. Freebern's office in September, 2003.  (Exb. B, pp. 88-90).  Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8) was "followed by" a CMS medical certification form.  (Exb. D, pp. 12-13).

39.    Defendant does not dispute that Exhibit 2 was properly completed for submission for a medical leave of absence and is in no way defective.  However, Defendant disputes that Exhibit 2 was completed and submitted prior to October 1, 2003.

(Exb. B, pp. 88-90). Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8) was "followed by" a CMS medical certification form. (Exb. D, pp. 12-13).

43.    Defendant does not dispute that by October 1, 2003, Dr. Kevin Freebern, a licensed chiropractic physician from the State of Illinois, certified to the State of Illinois that Rick Lind had a medical condition relating to his low back from July 24, 2003 through August 6, 2003. However, the Department disputes that any person or entity other than the Illinois Department of Corrections can "excuse" and employee from his obligation to work his scheduled shift. (Exb. A, p. 63).

44.    Defendant does not dispute that Exhibit 2 was properly completed for submission for a medical leave of absence and is in no way defective. However, Defendant disputes that Exhibit 2 was completed and submitted prior to October 1, 2003. (Exb. B, p. 88-90). Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition exb. 7, Pl's MSJ Exb. 8) was "followed by" a CMS medical certification form. (Exb. D, pp. 12-13).

49.    Defendant does not dispute that Exhibit 7 was received by that East Moline Correctional Center on or before September 5, 2003. However, Defendant disputes that this document was the second medical certification signed by Dr. Freebern. (Exb. B, p. 88-90). Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8) was "followed by" a CMS medical certification form. (Exb. D, pp. 12-13).

-4-

55.     First, Defendant has difficulty understanding what fact 55 is asserting. However, Defendant contends that the first medical certification was received sometime between August 14, 2003 and September 5, 2003, and that following receipt of the medical certification, Ms. Verstraete prepared a memorandum for the Warden's signature outlining deficiencies of the submitted paperwork.  (Exb. E); (Exb. B, pp. 89-90).  Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8) was "followed by" a CMS medical certification form.  (Exb. D, pp. 12-13).

60.     Defendant does not dispute that Exhibit 2 appears to be a medical certification form signed by a licensed chiropractic physician personally and completed in compliance with subsection C of the Disability Leave Policy under the Employee Handbook at the East Moline Correctional Center.  However, Defendant disputes that Exhibit 2 was completed and submitted in July, 2003.  (Exb. B, pp. 88-90, 94).  Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8) was "followed by" a CMS medical certification form.  (Exb. D, pp. 12-13).

62.     Defendant does not dispute that Exhibit 2 was in the control of the Warden's office by October 1, 2003.  However, Defendant disputes that Exhibit 2 was completed and submitted on or about July 30, 2003.  (Exb. B, pp. 88-9, 94).  Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8) was "followed by" a CMS medical certification form.  (Exb. D, pp. 12-13).

70.     Warden Jungwirth clarified that "half-slips" (Exhibit 9) would be sufficient for approval of absences per the proof status policy, which relates to use of accumulated sick time, (Exb. A, p. 74), which is different from a leave of absence under either the Illness and Injury leave or FMLA.  (Exb. F).

-5-

80, 81, 82, 83, and 85. Defendant incorporates the argument in its Memorandum in Support of Defendant's Motion to Strike Dr. Freebern's Affidavit, as if fully restated herein.

C.    **Immaterial Facts**

**Civil Service Commission Proceedings and Findings**

12.    The Illinois Civil Service Commission was not asked to rule on issues related to an alleged violation of the FMLA, so its determination is immaterial to the issued raised by Plaintiff.

14.    The Civil Service Commission's determination that the Department failed to comply with the technical requirements of the collective bargaining agreement in placing Plaintiff on proof status has no implication with respect to Plaintiff's claim of FMLA interference.

19.    The Illinois Civil Service Commission was not asked to rule on issues related to an alleged violation of the FMLA, so the proceedings before it is immaterial to the issued raised by Plaintiff.

73.    The determination of the Civil Service Commission relating to Plaintiff's discharge for violation of the proof status policy is not relevant to any issue raised by Plaintiff.

90-93.       The Illinois Civil Service Commission neither has jurisdiction to hear, nor was asked to hear a FMLA claim. Therefore, its findings are not relevant to the issues raised by Plaintiff.

-6-

**Disability Leave**

48.    An alleged violation of the Department's disability leave of absence policy, which is significantly less restrictive than the FMLA, is not relevant to the issues raised by Plaintiff.

53.    An alleged violation of the Department's disability leave of absence policy, which is significantly less restrictive than the FMLA, is not relevant to the issues raised by Plaintiff.

54.    An alleged violation of the Department's disability leave of absence policy, which is significantly less restrictive than the FMLA, is not relevant to the issues raised by Plaintiff.  Further, fact 54 misstates Ms. Verstraete's testimony, which ironically is included in the text of fact 54, in that, in her testimony, Ms. Verstraete merely confirmed that Plaintiff was disciplined after such time that the Warden did not process the leave request.  she did not testify that by disciplining Plaintiff, the Warden had acted in any manner inappropriately.

64.    East Moline Correctional Center's disability leave of absence policy, which is significantly less restrictive than the FMLA, and the Warden's obligations pursuant to that policy is not relevant to the issues raised by Plaintiff.

**Serious Medical Condition**

26-34.    Because Defendant does not challenge that Plaintiff was suffering from a serious medical condition from July 24, 2003 through August 6, 2003, these facts are immaterial to the issues raised by Plaintiff.

**Other Immaterial Facts**

13.    Availability of alternative, paid, benefit time is not relevant to the issues of interference with FMLA benefits raised by Plaintiff.

18.    The "Family Responsibility Leave" section of the collective bargaining agreement is not relevant to Plaintiff's claim of FMLA interference because he does not claim that he attempted to take leave to care for a family member.  Instead, Plaintiff's requested leave was due to his own illness or injury; therefore, the "Illness and Injury Leave" section of the collective bargaining agreement would govern Plaintiff's requested leave.

36.    Whether or not Pam Verstraete has documentation of Plaintiff's notification of his FMLA rights is irrelevant.  Ms. Verstraete testified that she believes that she hand-delivered an FMLA packet to Plaintiff, (Exb. B, 98-99), and that had she hand-delivered the packet, she would not have had documentation of that transaction.  Therefore, Ms. Verstaete's lack of documentation is neither material nor relevant to the inquiry before the Court.

40.    Pam Verstraete's testimony regarding her understanding of the Warden's role in approval of discharges is not material.  Instead, the Warden's actual role in approval of discharges, that he forwarded them on for further approval by the Department in Springfield and by the Department of Central Management Services, (Exb. A, p. 28); (Exb. B, p. 98), is relevant.

51.    Defendant does not dispute that the Department held an Employee Review Board hearing within three days of its notifying Plaintiff of the deficiencies of the provided medical certification and documentation.  However, because the Employee Review Board

-8-

hearing was commenced due to an alleged violation of a neutral, non-FMLA work rule, the timing of the Employee Review Board hearing is immaterial and irrelevant.

61.    The Defendant does not challenge the authenticity of Exhibit 16, the Employee Handbook of the East Moline Correctional Center.  However, it is not, in and of itself, a material fact.

74.    Plaintiff's proposed "what if" is not relevant to issued raised by Plaintiff in this matter.  The Department contests that Exhibit 8  was provided in a timely manner.  Had Exhibit 8 been provided in a timely manner, the Department would not have sought discipline against the Plaintiff. (Exb. A, p. 84).

75.    Discipline for violation of the proof status policy is separate and apart from the question of FMLA interference.  (Exb. A, pp. 84, 71-72).

76.    The Employee Review Board hearing on September 8, 2003, is only relevant in that it led to discipline for a non-FMLA related reason.  Any attempt by Plaintiff to link the Employee Review Board hearing to the deficiencies in the submitted medical certification for the requested leave is irrelevant to the issues raised by Plaintiff.

77.    Availability of alternative, paid, benefit time is not relevant to the issues of interference with FMLA benefits raised by Plaintiff.

78.    Plaintiff's proposed "what-if" is not relevant to issues raised in this action. The record shows that the Department had the understanding the Plaintiff was appropriately on proof status in 2003 and acted accordingly.  (Exb. A, p. 83).

### III.  ADDITIONAL MATERIAL FACTS

**Plaintiff's notice to the Department**

1.      During the ten days he was off work, Plaintiff informed Belinda Richardson, EMCC's timekeeper, that he was out of sick time and would be requesting use of alternative benefit time and a leave of absence.  (Exb. D, p. 17-18).

2.      Plaintiff also requested a CMS-95 from Pam Verstraete and told her he would be requesting a leave of absence.  (Exb. D, p. 20).

3.      Prior to July 24, 2003, Plaintiff had sought nearly thirty leaves of absence, most for one or two days, and for ailments from flu, ear pain, an abscessed tooth, to neck and back pain.  (Exb. L).

4.      Dr. Freebern, a chiropractor, had previously provided certification for Plaintiff's absences due to the flu.  (Exb. L, p. 100-101).

5.      In the time from October, 2002 through the and of 2003, Plaintiff had requested more than five CMS-95 forms, without ever indicating to Ms. Verstraete why he wanted the form or whether it was for himself or a family member.  (Exb. B, p. 103-4).

6.      Ms. Verstraete knew that Plaintiff had taken leaves of absence in the past for one or two days.  (Exb. B, p. 104).

7.       The only time Plaintiff made any mention of a back problem was in response to Ms. Verstraete asking how he was, (Exb. B, pp.101-2), to which Plaintiff responded that his "back still hurt."  (Exb. B, p. 45).

8.      Plaintiff testified that the doctor's slip, bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8) was "followed by" a CMS medical certification form.  (Exb. D, pp. 12-13).

**Collective Bargaining Agreement**

9.      As an employee of the Illinois Department of Corrections, the plaintiff was subject to the AFSCME master collective bargaining agreement.  (Exb. D, pp. 5-6).

10.      Employees covered by the AFSCME collective bargaining agreement have an entitlement to a leave of absence for illnesses that would not necessarily qualify for leave under the FMLA.  (Exb. F).

11.      The agreement allows for "Illness or Injury Leave" whereby an employee who has utilized all his accumulated sick leave days and is unable to report to work because of the "start or continuation of their sickness or injury" shall receive a disability leave.  (Exb. F).

12.      This leave is less restrictive that leave provided under the FMLA because there is no "serious medical condition" requirement.  (Exb. F).

13.      The collective bargaining agreement sets out the Defendant's notice requirement, "Prior to requesting [Illness or Injury] leave, the employee shall inform the Employer in writing the nature of the disability and approximate length of time needed for leave."  (Exb. F).

14.      Plaintiff never informed the Department in writing prior to requesting leave, prior to taking time off work, or even prior to submitting a doctor's slip or medical certification.  (Exb. D, pp. 12-14).

15.    Plaintiff "knew the procedure," (Exb. D, p. 18), and on July 24, 2003, requested a CMS-95 medical certification form to have his doctor complete.  (Exb. D, p. 20).

16.    On July 24, 2003, Plaintiff knew of the Department's requirement for a medical certification.  Id.

17.    The East Moline Correctional Center Handbook provides that the certification to be returned "as soon as possible."  (Pl's Exb. 16, p. 21).

18.    Because the FMLA guarantees Plaintiff fifteen days in which to provide medical certification, Plaintiff's medical certification was due no later than August 8, 2003. 29 C.F.R. § 825.311(b).

19.    Ms. Verstraete received a medical certification form bearing the date of July 30, 2003 (Verstraete deposition Exb. 2) for the first time on October 1, 2003.  (Exb. B, p. 94-5).

20.    On September 5, 2003, Ms. Verstraete prepared a memorandum for Warden Jungwirth's signature outlining deficiencies and inconsistencies in the supporting documentation provided by Plaintiff.  (Exb. E).

21.    In preparing this memorandum, Ms. Verstraete reviewed all of the documentation she had been personally provided, or that she had seen with respect to Plaintiff's absences.  (Exb. B, p. 85-86).

22.    Ms. Verstraete indicated that the turnaround time for her draft a memorandum to notify an employee of deficiencies in leave paperwork was two or three days.  (Exb. B, 106).

23.     Ms. Verstraete testified that following the September 5, 2003 memorandum, she communicated with Dr. Freebern's office in an attempt to get the deficiencies of Plaintiff's paperwork corrected.  (Exb. B, p. 89-90).

24.  The differences between Plaintiff's Exhibit 7 and Exhibit C are corrections of deficiencies identified by EMCC in the September 5, 2003 memorandum.  (Exb. E).

25.     Ms. Verstraete's learned on September 26, 2003, that Plaintiff had in fact, not had an examination on August 6, 2003, as indicated in Plaintiff's Exhibit 7, nor had he first been seen on July 24, 2003.  (Exbs. H, I and J).

26.     The medical certification bearing the date of July 30, 2003, was the medical certification Ms. Verstraete received as a result of the continued communication between herself and Ronda in Dr. Freebern's office.  (Exb. B, p. 88-9).

27.     Ms. Verstraete had had never seen Exbhibit G prior to October 1, 2003. (Exb. B, p. 94).

**Affirmative Attendance/Proof Status Policy**

28.     The Department's affirmative attendance administrative directive also contains the Department's policy with respect to proof status.  (Pl's Exb. 6, p. 7, ¶10).

29.     Proof status is a policy by which the Department can place an additional obligation of providing medical documentation for use of sick time on an employee whose attendance record creates reason to suspect abuse of sick time.  (Pl's Exb. 6, p. 4¶ 6(c)).

30.     In late summer and fall of 2003, the Department had an understanding that Plaintiff was on proof status and therefore had additional obligations when calling in sick. (Exb. D, p. 45); (Exb. A, p. 70-71).

31.    An employee on proof status is obligated to provide documentation from a medical practitioner within five work days.  (Pl's Exb. 6, p. 7, ¶10).

32.    Plaintiff should have provided the half-slip Notification of Absence forms and medical documentation have been provided to the major in order to provide proof for calling in sick.  (Exb. A, pp. 77-78).

33.    The major drafted the charges against Plaintiff alleging unauthorized absences, in that Plaintiff was on proof and had failed to provide documentation within five work days from his return.  (Exb. A, p. 77).

## IV.  ISSUES AND ARGUMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Spath v. Hayes Wheels In'l-Ind. Inc., 211 F.3d 392, 396 (7th Cir. 2000).  This standard is applied with special scrutiny in cases such as employment case that often turn on issues of intent and credibility.  Michas v. Health Cost Controls of Ill. Inc, 209 F.3d 687, 692 (7th cir. 2000).  A genuine issue of material facts exists if a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

FMLA's entitlement or interference theory arises from § 2615(a)(1): "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."  29 U.S.C. § 2615(a)(1).  Plaintiff correctly identifies the elements necessary to prevail on an FMLA interference claim: (1)

-14-

he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled.  (Pl's MSJ, p. 24); Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006).  Defendant agrees that Plaintiff, as of July 24, 2003, was eligible for FMLA's protections and that the IDOC is and was covered by the FMLA.  Plaintiff argues that summary judgment is proper because he provided sufficient notice of his intent to take leave and that Defendant denied him FMLA benefits to which he was entitled.

However, for or more of the following reasons, Plaintiff is not entitled to summary judgment: (1) Plaintiff failed to provide notice sufficient to place the Department on notice that the requested leave may have been an FMLA-qualifying leave; (2) Plaintiff failed to provide notice as soon as practicable as required by the FMLA; (3) Plaintiff failed to comply with the neutral policies of the Department contained in the collective bargaining agreement; (4) a genuine issue of material fact exists regarding the timeliness of Plaintiff's required medical certifications; and (5) a genuine issue of material fact exists regarding whether the Department denied Plaintiff FMLA benefits to which he was entitled.

### A.    Summary judgment is not proper because Plaintiff has failed to prove that he provided sufficient notice of his intent to take leave pursuant to the FMLA.

Plaintiff is not entitled to summary judgment because a reasonable jury could find that Plaintiff did not provide sufficient notice of his intent to take leave pursuant to the FMLA in the following ways: (1) the notice he provided was not adequate to put the Department on notice that his leave may have been covered by the FMLA; (2) Plaintiff

failed to provide sufficient notice within the guidelines of the FMLA; and (3) he failed to comply with the neutral requirements of the collective bargaining agreement.

### 1.    Plaintiff failed to provide sufficient notice.

To trigger FMLA protection, an employee must request leave from his employer and also state the grounds for such leave. Aubuchon v. Knauf Fiberglass, GMBH, 359 F.3d 950, 953 (7th Cir. 2004). Plaintiff admits that he had an obligation to provide the Department with sufficient information to suggest the FMLA may apply, given that most leaves requested by employees are not eligible for FMLA protection. Id. Thus, Plaintiff must have provided the Department with adequate notice to inform it that his condition was one which would meet the FMLA's requirements. Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311 (2006).

The Seventh Circuit has established that the mere use of the term "'sick' does not imply a 'serious health condition.'" Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001). A reference to being sick is not adequate to put the employer on notice that "the medical condition might be serious or that the FMLA otherwise could be applicable." Id. at 1008-09. Plaintiff testified, that during the ten days he was off work, he informed Belinda Richardson, EMCC's timekeeper, that he was out of sick time and would be requesting use of alternative benefit time and a leave of absence. (Exb. D, p. 17-18). Plaintiff also requested a CMS-95 from Pam Verstraete and told her he would be requesting a leave of absence. (Exb. B, p. 20). Nonetheless, Plaintiff's bare references to sick time and a generic leave of absence were insufficient to place the Department on notice of a probable basis for FMLA leave. Plaintiff does not allege that he told anyone at

EMCC or the Department of Corrections why he was missing work (other than calling in sick), how long he anticipated missing work, or that he was undergoing treatment that would last over a span of more than two days, all of which was information that could have provided the Department with a probable basis that his absences may have been covered by the FMLA.

Specifically, employees covered by the AFSCME collective bargaining agreement have an entitlement to a leave of absence for illnesses that would not necessarily qualify for leave under the FMLA. (Exb. F). For instance, if Plaintiff's "flare-up" lasted only one day, it would not meet the requirements of a "serious medical condition" entitling Plaintiff to FMLA benefits, but would meet the requirements for Illness or Injury leave pursuant to the collective bargaining agreement. *See* 29 C.F.R. § 825.144(a)(2)(i); (Exb. F). In fact, prior to July 24, 2003, Plaintiff had sought nearly thirty leaves of absence, most for one or two days, and for ailments from flu, ear pain, an abscessed tooth, to neck and back pain. (Exb. L). Dr. Freebern, a chiropractor, had previously provided certification for Plaintiff's absences due to the flu. (Exb. L, p. 100-101). In the time from October, 2002 through the and of 2003, Plaintiff had requested more than five CMS-95 forms, without ever indicating to Ms. Verstraete why he wanted the form or whether it was for himself or a family member. (Exb. B, p. 103-4). Ms. Verstraete knew that Plaintiff had taken leaves of absence in the past for one or two days. (Exb. B, p. 104). With this history, it would not be unreasonable for a jury to find that the Department could not have been on notice that Plaintiff's requested leave was probably covered by the FMLA without information regarding either the cause or the duration of need.

### 2. Plaintiff did not provide sufficient notice "as soon as practicable" as required by the FMLA.

An employee must notify his employer of his need for leave, where the leave is unforeseeable, as soon as practicable. 29 U.S.C § 2612(e)(1). "As soon as practicable" means notice must be given to the employer within no more than one or two working days of learning of the need for leave by making the employer aware of FMLA-qualifying leave. 29 CFR § 825.302(b) and 825.302(c). Plaintiff's bare statements that he would be requesting leave because he was out of sick time were insufficient to place the Department on notice that his leave may be covered by the FMLA. Even if Plaintiff provided additional information on July 30, 2003, by way of a medical certification form, which the Defendant disputes, he still failed to fulfill this initial obligation within one or two working days of learning of his need. In fact, the only time Plaintiff made any mention of a back problem was in response to Pam Verstraete asking how he was. (Exb. B, pp.101-2). While the record indicates that Plaintiff responded that his "back still hurt," a fact question exists as to when that conversation occurred. (Exb. B, p. 45). Plaintiff also cites Exhibit 8, a doctor's slip, as evidence that he met his initial obligation. (Pl's brief, p. 30). However, though the Department disputes when this document was actually received, the doctor's slip bears the date of August 4, 2003, twelve days after Plaintiff alleges his flare-up began, or ten days beyond the FMLA's required time. (Pl's Exb. 8).

### 3. Plaintiff failed to comply with the requirements of the collective bargaining agreement.

The Family and Medical Leave Act does not provide exemptions from compliance with the terms of a collective bargaining agreement; specifically, "nothing in the FMLA

-18-

entitles employees to variance from neutral rules about ways and means of giving notice." Diaz v. Fort Wayne Foundry Corporation, 131 F.3d 711, 713 (7th Cir. 1997). The FMLA authorizes an employer to require its employees to follow "the employer's usual and customary notice and procedural requirements for requesting leave," including written notice. 29 C.F.R. § 825.302(d) (2006). If the collective bargaining agreement has more specific terms concerning the notice requirement, the employer is entitled to follow those terms. Gilliam v. United Parcel Service, Inc., 233 F.3d 969, 971 (7th Cir. 2000). In Gilliam, the collective bargaining agreement afforded family leave but required only 10 days' notice rather than the 30 days' notice for foreseeable leave under the FMLA. Id. While an employer cannot use its collective bargaining agreement to require notice in excess of the 30 days the FMLA provides for, it can validly enforce other terms regarding notice specified in its collective bargaining agreement. Gilliam, 233 F.3d at 971; Diaz, 131 F.3d at 713.

As an employee of the Illinois Department of Corrections, the plaintiff was subject to the AFSCME master collective bargaining agreement. (Exb. D, pp. 5-6). The agreement allows for "Illness or Injury Leave" whereby an employee who has utilized all his accumulated sick leave days and is unable to report to work because of the "start or continuation of their sickness or injury" shall receive a disability leave. (Exb. F). This leave is less restrictive that leave provided under the FMLA because there is no "serious medical condition" requirement. (Exb. F). The collective bargaining agreement sets out the Defendant's notice requirement, "Prior to requesting [Illness or Injury] leave, the employee shall inform the Employer in writing the nature of the disability and approximate length of time needed for leave." (Exb. F). It is undisputed that the Plaintiff never informed the Department in writing prior to requesting leave, prior to taking time off work, or even prior

to submitting a doctor's slip or medical certification.  (Exb. D, pp. 12-14).  A reasonable jury could find that by failing to comply with the neutral notice requirements of the collective bargaining agreement, Plaintiff failed to provide sufficient notice; therefore, summary judgment is not appropriate.

> **B.**    **Plaintiff is not entitled to summary judgment because a reasonable jury could find for the Defendant on the issue of whether Plaintiff was denied FMLA benefits to which he was entitled.**

Even if Plaintiff's bare statements about sick time and a generic leave were sufficient to indicate to the Department that the leave might qualify under the FMLA, Plaintiff failed to provide adequate supporting medical documentation in a timely manner as required by the Act, therefore, forfeiting any entitlement to FMLA leave.  Further, the Department did not interfere with an FMLA entitlement when it discharged Plaintiff for a non-FMLA related policy violation.

> **1.**    **Fact question regarding when Plaintiff complied with the medical certification requirement precludes summary judgment.**

Plaintiff recognizes in his brief that a fact question indeed exists regarding when Plaintiff provided various medical certifications to the Defendant and proceeds to spend thirteen pages arguing why this fact question is immaterial.  This fact is material because if Plaintiff failed to provide complete medical certification within the fifteen days provided by the FMLA, the Department could have denied his leave request at that point, leaving Plaintiff without any entitlement from which to be denied.  *See* 29 C.F.R § 825.311(b); 29 U.S.C. § 2613(b).  Plaintiff alleges that "he knew the procedure," (Exb. D, p. 18), and that on July 24, 2003, he requested a CMS-95 medical certification form to have his doctor complete.  (Exb. D, p. 20).  Based on Plaintiff's own testimony, on July 24, 2003, he knew

of the Department's requirement for a medical certification. Id. The East Moline Correctional Center Handbook provides that the certification to be returned "as soon as possible." (Pl's Exb. 16, p. 21). However, because the FMLA guarantees Plaintiff fifteen days in which to provide medical certification, Plaintiff's medical certification was due no later than August 8, 2003. 29 C.F.R. § 825.311(b). Plaintiff testified that the doctor's slip bearing the date of August 4, 2003 (Jungwirth deposition Exb. 7, Pl's MSJ Exb. 8), was "followed by" a medical certification form. (Exb. D, pp. 12-13). The first medical certification form that could have followed an August 4, 2003 doctor's slip is Plaintiff's Exb. 7, which bears the date of August 14, 2003. Because a reasonable jury could find that the medical certification bearing the August 14, 2003 date was the first medical certification and that it was submitted beyond the August 8, 2003 deadline and find for the Defendant on this point, summary judgment is not appropriate.

Alternatively, Plaintiff alleges that Exhibit G was the first medical certification provided to the Department, and that it was provided on or about July 30, 2003. However, Exb. G, the only medical certification bearing the date of July 30, 2003, is date stamped October 1, 2003, contains a facsimile transmission with the heading "Freebern Chiropractic" and the date of October 1, 2003. (Exb. G). Further, Ms. Verstraete testified that she received this document (Verstraete deposition Exb. 2) for the first time on October 1, 2003. (Exb. B, p. 94-95). Plaintiff's own testimony, that the doctor's slip bearing the date of August 4, 2003 was followed by a medical certification, supports the Defendant's contention that no medical certification was provided on or about July 30, 2003. (Exb. D, pp. 12-13). Therefore, the evidence in this case could lead a reasonable jury to find that the medical certification form bearing the date of July 30, 2003 was not received until

-21-

October 1, 2003. This fact question precludes summary judgment of this matter.

With the exception of Plaintiff's testimony that he "followed-up" the August 4, 2003 doctor's slip with a medical certification, (Exb. D, pp. 12-13), Plaintiff sets forth an illogical set of facts. First, following an appointment with Dr. Freeebern on July 24, 2003, on or about July 30, 2003, Plaintiff provided the Department with a fully completed medical certification form which Dr. Freebern had completed. Then, over the next two months, Dr. Freebern began providing incomplete, inaccurate and contradictory medical certifications. This despite the fact that the medical records and bills provided by Freebern Chiropractic do not support much of the information contained within the "subsequent" medical certifications. Finally, at the end of numerous discussions between Dr. Freebern's office and Ms. Verstraete, Dr. Freebern's office merely faxed over the "original," fully-completed medical certification form which had been completed on July 30, 2003. A reasonable jury could find that this sequence of events defies logic and could find for the Department on this point.

Additionally, evidence supports the Department's contention of events. On September 5, 2003, Ms. Verstraete prepared a memorandum for Warden Jungwirth's signature outlining deficiencies and inconsistencies in the supporting documentation provided by Plaintiff. (Exb. E). In preparing this memorandum, Ms. Verstraete reviewed all of the documentation she had been personally provided, or that she had seen with respect to Plaintiff's absences. (Exb. B, p. 85-86). Ms. Verstraete indicated that the turnaround time for her draft a memorandum to notify an employee of deficiencies in leave paperwork was two or three days. (Exb. B, 106). The September 5, 2003 memorandum also includes a comment about a document dated August 20, 2003, leading to the logical

-22-

conclusion that Ms. Verstraete received medical documentation from Plaintiff between August 20, 2003 and September 5, 2003. (Exb. B, p. 106).

As an initial matter, it is important to note that the record contains two medical certifications bearing the date of August 14, 2003. One, Plaintiff's Exhibit 7, contains hand-written dates and hand-written changes in the diagnosis portion, indicates that Plaintiff had no physical impairment and makes no declaration as to any limitation. It is undisputed that the September 5, 2003, memo addresses deficiencies and inconsistencies in Plaintiff's Exhibit 7, as well as inconsistencies between the medical certification and the doctor's slip, bearing the date of August 20, 2003. Ms. Verstraete testified that following the September 5, 2003 memorandum, she communicated with Dr. Freebern's office in an attempt to get the deficiencies of Plaintiff's paperwork corrected. (Exb. B, p. 89-90).

The other medical certification bearing the date of August 14, 2003, Exhibit C, no longer contains hand-written dates or changes in the diagnosis portion, identifies that Plaintiff was suffering from a severe limitation of functional capacity, and contains a declaration that Plaintiff has no limitations. All of the differences between Plaintiff's Exhibit 7 and Exhibit C are corrections of deficiencies identified by EMCC in the September 5, 2003 memorandum. (Exb. E). Exhibit C also bears two separate date stamps from the EMCC Warden's Office. The first date stamp is September 24, 2003. (Exb. C). The second date stamp on Exhibit C is September 26, 2003, which appears to reference a hand-written change, initialed by Pam Verstraete, made pursuant to a September 26, 2003 conversation with Ronda. Ms. Verstraete's learned on September 26, 2003, that Plaintiff had in fact, not had an examination on August 6, 2003, as indicated in Plaintiff's Exhibit 7, nor had he first been seen on July 24, 2003. (Exbs. H, I and J).

Then there is the medical certification bearing the date of July 30, 2003, Exhibit G, which contains no hand-written remarks, every section is completed, including an additional remark in the limitation section than Exhibit C, and the dates on the first page are dates when Plaintiff actually had examinations. (Exbs. H, I, and J). In short, Exhibit G, cleans up all of the deficiencies which had been identified by EMCC and/or Ms. Verstaete. Exhibit G bears a date stamp of October 1, 2003, bears a fax identifying line dated October 1, 2003, 10:41 am, and appears to be the second and third pages following a fax cover sheet from Dr. Freebern's office, where Ronda writes, "Sorry it took so long." (Exb. K). Ms. Verstraete testified that she understood the "it" referred to in the fax cover sheet to be a completed medical certification. (Exb. K); (Exb. B, pp. 93-4). Ms. Verstraete further testified that the certification bearing the date of July 30, 2003, was the medical certification she received as a result of the continued communication between herself and Ronda in Dr. Freebern's office, (Exb. B, p. 88-9), and that she had never seen Exhibit G prior to October 1, 2003. (Exb. B, p. 94).

Based on the documents in this case, a reasonable jury could conclude that Exhibit G, though it bears the date of July 30, 2003, was not completed until some time after September 26, 2003, and was not provided to the Department until October 1, 2003. A reasonable jury could determine that it makes sense that a chiropractor's office would not continue to send deficient certifications or fail to entirely complete a certification, when it had, more than a month prior, provided a pristine certification which was in no way deficient. A reasonable jury could determine that a chiropractor's office that was so busy that Plaintiff could not get an appointment for nearly a week was too busy to sit down and type out an entire form on the spot. Because this fact question exists and bears directly

-24-

of Plaintiff's entitlement to FMLA benefits, Plaintiff is not entitled to summary judgment.

> **2.     The Department did not interfere with Plaintiff's FMLA benefits when it discharged Plaintiff for a non-FMLA related policy violation.**

Plaintiff argues that the Defendant interfered with his FMLA rights by discharging him.  (Pl's Brief, p. 39).  The facts instead illuminate show that Plaintiff was discharged, not in an attempt to interfere with or constrain Plaintiff from exercising his rights under the FMLA, but because he violated an independent, neutral Department policy regarding proof status.  (Exb. A, p. 83).  An employee who requests FMLA leave has no greater protection against his employment being terminated for reasons not related to his or her FMLA request than he did before submitting the request.  *See* 29 C.F.R. § 825.216(a); *see also* Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262 (10th Cir.1998) (citing 29 C.F.R. § 825.216(a)); Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960-61 (10th Cir. 2002).

The Department's administrative directives contain the policies of the Department. The Department's affirmative attendance administrative directive also contains the Department's policy with respect to proof status.  (Pl's Exb. 6, p. 7, ¶10).  Proof status is a policy by which the Department can place an additional obligation of providing medical documentation for use of sick time on an employee whose attendance record creates reason to suspect abuse of sick time.  (Pl's Exb. 6, p. 4¶ 6(c)).  It is undisputed that in late summer and fall of 2003, the Department had an understanding that Plaintiff was on proof status and therefore had additional obligations when calling in sick.  (Exb.  D, p. 45); (Exb. A, p. 70-71).  An employee on proof status is obligated to provide documentation from a

medical practitioner within five work days.  (Pl's Exb. 6, p. 7, ¶10).  Plaintiff alleges that he provided a doctor's slip, dated August 4, 2003, to the Department in a timely manner.  However, this allegation is in direct contradiction with the Department's understanding as evidenced by the actions taken to discipline Plaintiff for failing to provide timely proof of his absences.  Plaintiff's supervisor would have been the shift commander, also known as the major.  (Exb. B, p. 82).  Plaintiff would have provided the half-slip Notification of Absence forms and medical documentation should have been provided to the major in order to provide proof for calling in sick.  (Exb. A, pp. 77-78).  Notably, the major was the individual who drafted the charges alleging unauthorized absences, in that Plaintiff was on proof and had failed to provide documentation within five work days from his return.  (Exb. A, p. 77).  In August, 2003, when charges were drafted by Plaintiff's major, the department had an understanding that Plaintiff was on proof status and had failed to provide proof of his absence within five days of his return work, causing his absences to be unauthorized.  (Exb. A, pp. 77-78; Exb. D, p. 45).  Further, the hearing officer, Dave Rayborn, in recommending Plaintiff's discharge, determined that Plaintiff had failed to provide the required documentation within the time allowed by the proof status policy.  (Exb. A, p. 72-73).  This conflict presents a fact question which would cause a jury to weigh credibility.  As such, summary judgment is not appropriate.

Plaintiff argues that he should not have been disciplined because he had not been provided fifteen days between the September 5, 2003 notification of deficiencies in the medical certification for his requested leave.  However, correction of the deficiencies in the medical certification for a leave of absence did not cure the proof status violation for which Plaintiff was referred to the Employee Review Board and ultimately discharged.  (Exb. A,

pp. 71-72).

In short, regardless of the sufficiency of Plaintiff notice or the timeliness of Plaintiff's medical certification, the understood violation of the affirmative attendance policy regarding proof status would have led to his discharge. The Civil Service Commission's ruling in 2005 that Plaintiff was not appropriately placed on proof status in May, 2003, has no bearing on the issue of why Plaintiff was recommended for discharge in September, 2003.

Plaintiff attempts to mix apples and oranges when he argues that he was denied FMLA benefits because he was terminated, when in fact, Plaintiff's request for leave pursuant to FMLA was unrelated to his termination for a violation of a neutral, non-FMLA work rule, the Department's proof status policy.

## V. <u>CONCLUSION</u>

Plaintiff is not entitled to summary judgment because a reasonable jury could find that Plaintiff did not provide sufficient notice of his intent to take leave pursuant to the FMLA in the following ways: (1) the notice he provided was not adequate to put the Department on notice that his leave may have been covered by the FMLA; (2) Plaintiff failed to provide sufficient notice within the guidelines of the FMLA; and (3) he failed to comply with the neutral requirements of the collective bargaining agreement.

Even if Plaintiff's bare statements about sick time and a generic leave were sufficient to indicate to the Department that the leave might qualify under the FMLA, Plaintiff failed to provide adequate supporting medical documentation in a timely manner as required by the Act, therefore, forfeiting any entitlement to FMLA leave. Further, the Department did not interfere with an FMLA entitlement when it discharged Plaintiff for a non-FMLA related policy violation. Because a reasonable jury could find for the

-27-

Department on this issue of whether Plaintiff was denied benefits to which he was entitled,

summary judgment is not appropriate.

WHEREFORE, Defendant respectfully requests this honorable Court deny the

Motion for Summary Judgment and enter judgment in favor of the Defendant.

Respectfully submitted,

ILLINOIS DEPARTMENT OF
CORRECTIONS,

Defendant,

LISA MADIGAN, Attorney General,
State of Illinois

By:  s/ Sarah R. Kerley
Sarah R. Kerley, #6283449
Assistant Attorney General
Attorney for Defendant
500 South Second Street
Springfield, Illinois  62706
Telephone:  (217) 782-9026
Facsimile:   (217) 524-5091
E-Mail:  skerley@atg.state.il.us

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

RICK LIND,                                    )
                                              )
            Plaintiff,                        )
                                              )
      - vs-                                   )            No. 05-4059
                                              )
STATE OF ILLINOIS DEPARTMENT                  )
OF CORRECTIONS,                               )
                                              )
            Defendant.                        )

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2007, I electronically filed a Response to Plaintiff's

Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which

will send notification of such filing(s) to the following:

    Stephen T. Fieweger
    Katz, Huntoon & Fieweger
    sfieweger@katzlawfirm.com

and I hereby certify that on March 2, 2007, I mailed by United States Postal Service, the

document(s) to the following non-registered participant(s):


    None


                        Respectfully Submitted,
                         s/ Sarah R. Kerley
                        Sarah R. Kerley, #6283449
                        Assistant Attorney General
                        Attorney for Defendant
                        500 South Second Street
                        Springfield, Illinois  62706
                        Telephone:  (217) 782-9026
                        Facsimile:   (217) 524-5091
                        E-Mail:  skerley@atg.state.il.us