**E-FILED**
Monday, 19 March, 2007  05:21:58 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| RICK LIND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 05-4059 |
| | ) |
| STATE OF ILLINOIS, through its | ) |
| Agency THE ILLINOIS | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

**REPLY TO DEFENDANT'S RESPONSE TO
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Rick Lind, by and through his attorneys, Katz, Huntoon & Fieweger,

P.C., and pursuant to Local Rule 7.1(D)3, respectfully provides the following Reply to

Defendant's Response to Motion for Summary Judgment:

**A.  REPLY TO ADDITIONAL MATERIAL FACTS**

(1)  It is conceded the following alleged additional material facts are material and

undisputed:  1, 2, 6, 8-11, 15-17, 20, and 28-29.

(2)  Plaintiff concedes the following alleged additional material facts are material,

but disputed:

7.  The only time Plaintiff made any mention of a back problem was in response to
Ms. Verstraete asking how he was, to which Plaintiff responded that his "back still hurt."

2

RESPONSE:

To the extent it is relevant that plaintiff made mention of his back problem only one time to Ms. Verstraete, plaintiff disputes because the physician statements dated July 30, 2003 and August 14, 2003 both "make mention" of a back problem. (See, for example, plaintiff's Exhibit 2: "This episode is a severe irritation of tissue damage in a major auto accident … " with a diagnosis of "cervical subluxation, headaches, thoracic subluxation, muscle spasms, lumbar subluxation and pelvic sub."

13. The collective bargaining agreement sets out the Defendant's notice requirement, "Prior to requesting [Illness and Injury] leave, the employee shall inform the Employer in writing the nature of the disability and approximate length of time needed for leave."

RESPONSE:

Plaintiff disputes because this is directly contrary to the evidence and admissions established in the proceedings before the Civil Service Commission. See plaintiff's Exhibit 5 where counsel for defendant explicitly admitted that (a) not only was this issue never mentioned by the State as a reason for any employment action in this matter, but also (b) the policy is **not** as defendant has stated it in this Statement of Fact No. 13. Appearing on behalf of petitioner, State of Illinois, Attorney Kevin Lovellette was asked by the administrative judge whether the State was pursuing this issue and answered:

"I don't think in the petitioner's case-in-chief it was ever mentioned that the CMS 95's or medical leaves of absence have to be approved prior to the actual leave, and that's not what the policy says … ." (Exhibit 5, p. 71.)

3

In answer to the court's specific question:

> "So you are not relying, nor are you going to hang your hat on the fact that he was late if you strictly construe the rules.  Your position is that his lateness or tardiness in submitting documentation isn't the basis for the discharge."

Mr. Lovellette responded:

> "I would not go that far.  I would say **it doesn't have to be pre-approved before the leave is taken**.  However, the rules say it has to be done in five days after you take the leave.  (Id., p. 72.)

Additionally, the only evidence before this court in the form of actual sworn testimony is that of the union representatives at the Civil Service Commission Hearing, specifically Jeff Papish at p. 100:

> "Q.  Must you submit your request for alternative time before you take the alternative time?
>
> A.  No.  You request alternate time after you've taken the time off."

See also testimony of Randy Sanders, plaintiff's Exhibit 5 at p. 126:

> "A.  There is a practice.  If a person is off on sick leave, they exhaust their sick leave.  Then they can fill out for a leave of absence.
>
> Q.  And must they do that before they're on the sick leave or the leave?
>
> A.  No."

Additionally, as supported in the Argument section, defendant is attempting to impose a duty on Rick Lind which the FMLA does not impose where, as here, the serious medical condition was unforeseen.  See 29 C.F.R. § 825.302(b) and (c).

4

14.  Plaintiff never informed the Department in writing prior to requesting leave, prior to taking time off work, or even prior to submitting to a doctor's slip or medical certification.

RESPONSE:

Plaintiff, of course, disputes that there was any duty to provide prior written request (see Response above to No. 13), but also disputes that he "never" informed the Department in writing; in support, see attached Exhibit 17 (additional excerpts from the Deposition of Rick Lind, at p. 20, wherein he testified he told Pam Verstraete that "he needed a CMS-95 and I would be applying for an LOA," and that he submitted the CMS-95 on the same day Dr. Freebern signed it on July 30, 2003.  (Id.))  See also Id., p. 31:

> "Q.  It's your testimony that that document was signed by your physician on July 30, 2003 and that you drove it to East Moline Correctional Center and handed it to Pam Verstraete?
>
> A.  That's correct."

19.  Ms. Verstraete received a medical certification form bearing the date of July 30, 2003 for the first time on October 1, 2003.

RESPONSE:

Plaintiff has consistently disputed this alleged fact.  Please see reference to Exhibit 17, Lind Dep., p. 31, and Response to No. 14 above.  See also plaintiff's Exhibit 15 submitted with his original summary judgment motion, excerpt from Lind Dep., p. 29. See also testimony of Pam Verstraete, Exhibit 12, pp. 62-63, where she admitted that she

5

has no personal knowledge of whether the July 30, 2003 CMS-95 form was actually

turned into the Warden's office by Rick Lind on July 30, 2003.

21.  In preparing this memorandum, Ms. Verstraete reviewed all of the
documentation she had been personally provided, or that she had seen with respect to
Plaintiff's absence.

RESPONSE:

Plaintiff disputes that "Ms. Verstraete reviewed all of the documentation she had

personally been provided" because plaintiff testified that Ms. Verstraete had been

provided the July 30, 2003 physician statement on July 30, 2003.  (See citations to No. 19

above.)  Therefore, because defendant is now admitting the July 30, 2003 physician

statement is a "pristine certification which was in no way deficient," (defendant's

response at p. 24), Ms. Verstraete could not have reviewed all of the documentation she

had personally provided or she would never have sent her September 5, 2003

memorandum.

26.  The medical certification bearing the date of July 30, 2003, was the medical
certification Ms. Verstraete received as a result of the continued communication between
herself and Ronda in Dr. Freebern's office.

RESPONSE:

Plaintiff is not disputing whether Ms. Verstraete received the July 30, 2003

certification **again** pursuant to her communications with Dr. Freebern's office, but does

dispute that (a) this was the first time Ms. Verstraete received the July 30, 2003

certification and (b) that the first time the July 30, 2003 certification had ever been

6

prepared or finalized was as a result of Ms. Verstraete's communications with Ronda with

Dr. Freebern's office in September 2003.  In addition to the references previously

provided in response to No. 19, please see paragraph 5 of the Affidavit of Kevin

Freebern, plaintiff's Exhibit 14:

> "That on July 30, 2003, I completed a physician statement at the request of
> Mr. Lind setting forth my findings and diagnosis and course of treatment and
> signed the document and provided it to Mr. Lind on July 30, 2003.  Exhibit A, a
> true and correct copy of the Physician Statement that I provided to Mr. Lind on
> July 30, 2003 is attached hereto and made a part of this Affidavit."

As supported in plaintiff's Resistance to Defendant's Motion to Strike, the State never

chose to take the deposition of Dr. Freebern (or, for that matter, Ronda from his office),

and has provided this court with no affidavit or any other competent evidence to dispute

the facts set forth in paragraph 5 of Dr. Freebern's Affidavit.

        27.  Ms. Verstraete's had had (sic) never seen Exhibit G prior to October 1, 2003.

RESPONSE:

        In addition to plaintiff's previous citations (see Response to Nos., 14 and 19) that

Rick Lind had personally delivered defendant's Exhibit G (which is also plaintiff's

Exhibit 2), please see also Exhibit 17, supplemental excerpts from Rick Lind Deposition,

p. 34, where he indicated that he asked Pam Verstraete about the documentation he had

submitted on July 30 and "she told me it was on the Warden's desk."  Likewise, see Id., p.

35, wherein Lind testified he had "subsequent conversations" with Ms. Verstraete

7

regarding his paperwork and "she told me … everything had been sent to Springfield.  I

asked where in Springfield.  She couldn't tell me."

Please also see plaintiff's Exhibit 5 (the Transcript of Proceedings in the Civil

Service Commission), specifically the testimony of Jeff Papish at p. 106:

> "Pam Verstraete and the other lady that works in the office down there.
> They assured us many times that it was sent off.  They're waiting word.  And
> nothing ever came back.  Nothing ever came back.  And, you know, that's all we
> can go on is what they tell us."

30.  In later summer and fall of 2003, the Department had an understanding that
Plaintiff was on proof status and therefore had additional obligations when calling in sick.

RESPONSE:

First, plaintiff believes defendant has not properly supported this assertion that it

"had an understanding" that plaintiff was on proof status.  Instead of providing this court

with any sworn testimony of any of its witnesses, the State actually relies on the

Deposition of Rick Lind.  But in further disputing this "fact," at the page cited by

defendant, Lind Dep., p. 45, the full dialogue was as follows:

> "Q.  And the charges also indicated that you were on proof status -- or that
> the Department contended that you were on proof status?
>
> A.  When I asked my alternative time, I wrote right on my slips not on
> proof, so I knew I was not on proof status.
>
> Q.  But the charges informed you that the Department held the position that
> you were on proof status; correct?
>
> Mr. Fieweger:  Not whether it was correct or not.

8

Q.  That the Department had that contention, that the Department was telling you that it thought you were on proof status; correct?

A.  Yes.  Yes."

Additionally, defendant has already admitted pursuant to Request to Admit No. 8 that Rick Lind was not, in fact, on proof status as of July 24, 2003.  (See plaintiff's Statement of Undisputed Fact No. 14.)

Further disputing this alleged fact, see plaintiff's Exhibit 5, the Transcript from the Civil Service Commission, pp. 102 through 104, wherein Jeff Papish testified that both the shift commander (Major Spriet) and relief shift commander (Captain Stump) "stated that Rick Lind was not on proof status."  It was not the entire "Department's understanding "that Rick Lind was on proof status as further evidenced by Rick Lind's repeated notations on his work slips.  (See plaintiff's Exhibit 9, that he was "not on proof status.")

Finally, whether the "Department" had an erroneous understanding that plaintiff was on proof status is irrelevant for purposes of FMLA.

32.  Plaintiff should have provided the half-slip Notification of Absence forms and medical documentation have been provided to the major in order to provide proof of calling in sick.

RESPONSE:

Plaintiff first objects as it appears that words have been inadvertently omitted from paragraph 32, and this alleged Statement Fact is further vague in that the "major" is not identified.  In further dispute, defendant provides as support for this assertion pp. 77

9

through 78 of the deposition of Warden Jungwirth, but his testimony clearly relies on facts which are not in evidence -- that plaintiff was, in fact, on furnished proof status. As Warden Jungwirth conceded at p. 78:

> "Q.  Your answer to that question assumes that Mr. Lind was properly on furnished proof status; correct?
>
> A.  That is correct, yes.
>
> Q.  And Mr. Lind would not be required to provide medical documentation to cover his absences if he wasn't on furnished proof status, would he.
>
> A.  No, he wouldn't.

Again, please see plaintiff's Statement of Fact No. 14, which references defendant's admission that Rick Lind was not, in fact, on furnish proof status as of July 2003. Further, plaintiff did, in fact, provide signed half slips to his supervisor by August 7, 2003.  See plaintiff's Exhibit 9, his completed Notification of Absences half slip forms for the period of July 24 through August 6, 2003.  See also Exhibit 10, defendant's Response to Request to Admit Facts and, in particular, Fact Nos. 42 and 43, where defendant has admitted that the half sheets for the period of July 24 through August 6, 2003 were submitted by plaintiff to defendant.

33.  The major drafted the charges against Plaintiff alleging unauthorized absences, in that Plaintiff was on proof and had failed to provide documentation within five work days from his return.

10

RESPONSE:

Plaintiff denies that he was on "proof" at the time the unidentified "major"
allegedly drafted any charges against plaintiff and, in fact, pursuant to the references in
Nos. 29 and 32 above, a disputed fact in this case is that Rick Lind was not, in fact, on
"proof" at this time.  Additionally, please see the Argument section below -- defendant's
intent is irrelevant for purposes of FMLA, even if it was under the mistaken belief or
understanding the Rick Lind was on proof status when, in fact, he admittedly was not.


      **(3)  "Additional material facts" claimed to be immaterial are as
follows:**


3.  For purposes of FMLA and for purposes of plaintiff's status as of July 24, 2003
(i.e., that he was not on proof status), it is immaterial and irrelevant whether plaintiff had
previously sought leaves of absence.

4-5.  As interposed during Mr. Lind's deposition at the page cited by defendant,
plaintiff objected as immaterial and irrelevant whether he had requested CMS forms on
prior occasions.

12.  As argued and supported in the Argument section, defendant's leave of
absence policy under the Collective Bargaining Agreement is not relevant to this FMLA
proceeding.

11

22.  Plaintiff does not dispute that Ms. Verstraete testified that her turn around time was two to three days, but that "fact" is immaterial and is vague, since the answer does not define what "turn around time" means.

23-25.  As supported in the denial of paragraphs 26 through 27, plaintiff submits it is immaterial what "communications" Ms. Verstraete had with Dr. Freebern's office where defendant has admitted that the July 30, 2003 certification had "no deficiencies" (defendant's Brief, at 24), and defendant has provided this court no factual dispute to Dr. Freebern's Affidavit that he did, in fact, complete that certification on July 30, 2003. Moreover, defendant has failed to rebut plaintiff's testimony that he did, in fact, turn in the July 30, 2003 doctor's certification to the Warden's office on July 30, 2003.

31.  It is entirely irrelevant what an employee on proof status is obligated to provide where defendant has admitted that Rick Lind was not, in fact, on proof status as of July 24, 2003 or thereafter.  Further responding, the certification provided July 30, 2003 was provided the same day as Rick's visit with Dr. Freebern on July 30, 2003. Further, as established by the record, besides the two completed CMS-95 forms of July 30, 2003 and August 14, 2003, defendant has admitted plaintiff provided it with completed Notification of Absence "half slips" for each day between July 24, 2003 and August 4, 2003, and also that Dr. Freebern signed an off work authorization form that defendant had as of August 7, 2003.  (Exhibit 18, supplemental Verstraete Deposition, pp. 73-77 and Exhibit 5, p. 60.)

12

## B. **ARGUMENT**

### I.

### GENERAL REPLY TO DEFENDANT'S RESPONSE

Plaintiff, Rick Lind, would first ask this court to take judicial notice of admissions in defendant's Brief which take some major issues out of contention in this case. First, at page 7 of its response, defendant admits that "defendant does not challenge that plaintiff was suffering from a serious medical condition from July 24, 2003 through August 6, 2003." Next, at p. 24, defendant admits that the document plaintiff attached as Exhibit 2 and the document defendant attaches as Exhibit G, the physician statement signed by Dr. Freebern bearing the date July 30, 2003, is a "pristine certification which was in no way deficient."

Together with defendant's concessions at p. 15 that it "agrees that as of July 24, 2003 plaintiff was eligible for FMLA protections and that the IDOC is and was covered by the FMLA," plaintiff believes summary judgment is mandated on these admissions alone. Cutting through all of defendant 's arguments about when it received which particular physician statement, the State makes it absolutely clear that at the very latest it had received the physician statement dated July 30, 2003, the statement it admits was "in no way deficient" (Brief, p. 24), by October 1, 2003. It is of no legal consequence that the Department had recommend a 30-day suspension pending discharge on September 8, 2003 where (1) Rick Lind was not suspended until October 16, 2003 and terminated until

13

November 6, 2003; (2) defendant had never properly invoked any requirements of the

FMLA to Rick Lind; and (3) as a matter of law, as this court found in <u>Ransdell</u> v.

<u>Heritage Enterprises</u>, 2006 U.S. Dist. LEXIS 82979 (C.D. Ill. 2006):

> "Defendant's first argument needs only a brief mention.  The defendant's
> position - that plaintiff could not request medical leave on January 5 because her
> employment was terminated on December 23 - begs the question whether plaintiff
> was entitled to medical leave under the FMLA on December 23.  If she was, then
> termination of her employment on December 23 interfered with her rights under
> the FMLA."  <u>Ransdell</u> at *14.

Here, at the very latest defendant, by October 1, 2003, had a properly completed

physician statement entitling Rick Lind to medical leave under the FMLA for what

defendant now admits was a serious health condition between July 24, 2003 and August

6, 2003.  Accordingly, the suspension on October 16, 2003 and the termination of Rick

Lind's employment on November 6, 2003 for missing work on July 24 through August 6,

2003, interfered with Rick's rights under the FMLA.

## II.

**UNDER SEVENTH CIRCUIT AUTHORITY, RICK LIND PROVIDED
SUFFICIENT NOTICE OF HIS INTENT TO TAKE LEAVE PURSUANT TO
THE FMLA.**

Addressing defendant's arguments, then, the State first argues that "plaintiff's bare

references to sick time and a generic leave of absence were insufficient to place the

Department on notice of a probable basis for FMLA leave."  (Brief, p. 16.)  Even viewing

all facts favorably to defendant, it is undisputed that Rick Lind did, in fact, notify IDOC

of his need for leave "as soon as was practicable" or "within no more than one or two

14

working days of learning of the need for leave." (Defendant's Brief, p. 18, citing 29

U.S.C. § 2612(e)1 and 29 C.F.R. § 825.302(B) and (C). That is, plaintiff's "flare up" was

on or about July 24, 2003 and that very same day, July 24, 2003, plaintiff requested from

the Department the personnel action form requesting a disability leave of absence. (See

plaintiff's summary judgment, Exhibit 1.) It is undisputed that the Department's own

personnel by July 30, 2003 filled out the top of this form, including the effective date

"07-24-03" and wrote under the type of leave of absence a description which included the

word "disability." As stated in Price v. City of Fort Wayne, 117 F.3d 1022, 1025-26 (7th

Cir. 1997):

> "(Plaintiff) filled out the City-provided leave request form and indicated
> that the cause was medical need. She attached a doctor's note requiring her to take
> the time off. This was sufficient information to put the City on notice that this was
> a possible FMLA leave situation. See Manuel v. Westlake Polymers Corp., 66
> F.3d 758, 760, 764 (5th Cir. 1995). It was then the City's responsibility to inquire
> further. See 29 C.F.R. § 825.303(b); Endry v. GTE North, Inc., 896 F.Supp. 816,
> 828 (N.D. Ind. 1995)." (Emphasis added.)

Second, the Seventh Circuit very recently stressed in Burnett v. LFW, Inc., 472

F.3d 471 (7th Cir. 2006), an employer cannot be blind to the circumstances of an

employee's request for leave, particularly where, as here, the employee is calling in every

day, filling out proper forms for his absences, and where, plaintiff believes the evidence

is undisputed that Rick Lind was "hurting like hell" (see plaintiff's summary judgment

Exhibit 15, Lind Dep., p. 25) at the time he presented to the DOC personnel on July 24,

2003. As stated in Burnett, 472 F.3d at 479:

15

> "In certain instances, however, an employer is obligated to provide medical leave even though an employee has failed even to say he is sick. Indeed, an employee may be excused from expressing a need for medical leave in at least two exceptional situations -- when circumstances provide the employer with sufficient notice of the need for medical leave or when the employee is incapable of providing such notice. See Byrne v. Avon Products, Inc., 328 F.3d 379, 381-382 (7th Cir. 2003). Some observable changes in an employee's condition (such as a broken arm) present an obvious need for medical leave, thereby obviating the need for an expressed request for medical leave. (See Id. at 382.)"

Truly, this is an issue generated by the Department's attorneys, not by any witnesses in the form of affirmative testimony in depositions or by way of affidavit. Not a single witness at trial will testify that Rick Lind was not showing observable changes in his condition, substantiating his testimony that his back "hurt like hell," and to the contrary, Rick Lind, in addition to the two union representatives, Papish and Sanders, will testify that there was no doubt as to these "observable changes" of which the Department was aware the very date it happened, July 24, 2003. See Exhibit 5. See also the admission of defendant's primary witness, Pam Verstraete, who admitted that during the pendency of this request for leave she inquired as to the status of Rick's back condition and knew that Rick's back still hurt. Exhibit 12, p. 45.

Additionally, plaintiff maintains his argument that the Department shifts all burdens under the FMLA onto him ignoring all of its burdens and duties. As stated in Burnett v. LFW Inc., 472 F.3d 471, 478-479 (7th Cir. 2006):

> "The notice requirements of the FMLA are not onerous. An employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions. Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311 (7th Cir. 2006) (citing 29 C.F.R. § 825.303(b)). Indeed, 'the employee can be completely

16

ignorant of the benefits conferred by the Act . . .' <u>Stoops</u> v. One Call Commc'ns, 141 F.3d 309, 312 (7th Cir. 1998). The employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an FMLA-qualifying condition. See <u>Aubuchon</u> v. <u>Knauf Fiberglass, GMGH</u>, 359 F.3d 950, 953 (7th Cir. 2004). ('[T]he employee's duty is merely to place the employer on notice of a *probable* basis for FMLA leave.' (emphasis added)); <u>Collins</u> v. <u>NTN Bower Corp.</u>, 272 F.3d 1006, 1008 (7th Cir. 2001). ('[E]mployers . . . are entitled to the sort of notice that will inform them . . . that the FMLA *may* apply."' (emphasis added)). …

Once an employee informs his employer of his probable need for medical leave, the FMLA imposes a duty on the employer to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave. See <u>Aubuchon</u>, 359 F.3d at 953. ('[The employee] just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave. That is enough to trigger the employer's duty to request such additional information . . . as may be necessary to confirm the employee's entitlement.' (citing 29 C.F.R. §§ 825.302(c), 825.303(b), 825.305(d))."

In its Brief, defendant claims "the only time plaintiff made any mention of a back problem was in response to Pam Verstraete asking "how he was (defendant's Brief, p. 18), and defendant concedes the record indicates that the plaintiff responded that his 'back **still** hurt.'" First, there is nothing in this record supporting defendant's assertion that this was the only time. Second, the very fact that plaintiff indicated to Pam Verstraete that his back **still** hurt, obviously implies that he had told her previously that his back hurt for the work "still" to have any meaning. (See <u>Webster's 9[th] Edition</u>: "Used as a function word to indicate the continuance of [a] … condition.")

Finally, plaintiff would argue defendant has not created a <u>material</u> issue of fact because the Department itself never maintained that Rick Lind failed to advise it in a

17

timely manner of his back condition, but has at all times only complained about whether he had provided adequate notice.  This leads to defendant's arguments at p. 20, <u>et</u>. <u>seq</u>., that there are fact questions "regarding when plaintiff complied with the medical certification requirement."

**A.  <u>There Are No Material Questions Of Fact Or Law As To Whether Plaintiff Complied With The Medical Certification Requirement.</u>**

Defendant argues that "if plaintiff failed to provide complete medical certification within the 15 days provided by the FMLA, the Department could have denied his leave request at that point, leaving plaintiff without any entitlement from which to be denied." (Defendant's Brief, p. 20.)  But where in this record has the Department ever demonstrated that it started this 15-day period to run!?  <u>Nowhere</u>.  There is simply nothing in this record to indicate that defendant ever properly invoked the FMLA to Rick Lind.

Under the plain terms of 29 C.F.R. 825.305(d):

> "At the time the employer requests certification, the employer **must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification**.  The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency."

It is undisputed the Department never advised Rick Lind of any consequences of his failure to provide adequate certification under the FMLA.  It is also undisputed that the defendant has no written documentation to establish that it at anytime requested from Rick certification.  Yet, by October 1, 2003, Rick Lind had provided 2 separate

18

certifications and a separate off work authorization form to cover the period in question,

the same time period for which defendant suspended and fired plaintiff for missing work.

See also this court's opinion in Ransdell v. Heritage Enters., 2006 U.S. Dist.

LEXIS 82979  (C.D. Ill. 2006)

> "FMLA requires that an employee needing a leave give notice to the employer of the necessity for leave. Where the need was not foreseeable, the employee must give such notice 'as is practicable.' 29 U.S.C. § 2612(e).  That notice may be either written or verbal, in person or by telephone.  29 C.F.R. § 825.302.  The employee need not reference the FMLA; she simply must advise of the need for leave in a manner that makes the employer aware."  29 C.F.R. 825.302(c).  See also Price, 117 F.3d at 1024.

> "Once the employer has notice, more information, including medical certification, may be requested, and the employee is expected to provide that information where possible.  29 U.S.C. 2613; 29 C.F.R. 825.303(c).  The employer may require medical certification that includes the date the condition began, its likely duration, relevant medical facts, and a statement that the employee is unable to work.  29 U.S.C. § 2613(a), (b); 29 C.F.R. 1 825.306.  If the certification is incomplete, the employer must give the employee a reasonable opportunity to cure the deficiency.  29 C.F.R. 1 825.305(d); see also Kauffman, 426 F.3d at 886.  Where the need for leave is unforeseeable, the FMLA gives the employee 15 calendar days after the employer's request to submit certification from the provider."  29 C.F.R. 825.305(b); Kauffman, 426 F.3d at 886; Rager v. Dade Behring, 210 F.3d 776, 777 (7th Cir. 2000).  (Emphasis added.)

and Hackney v. Cent. Ill. Pub. Serv. Co., 2006 U.S. Dist. LEXIS 51850 (C.D. Ill. 2006):

> "Under the FMLA, the employer always has the burden 'to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee.'  Id. (quoting 29 C.F.R. § 825.208.(a)).  Upon being notified of the employee's need for leave, the employer may request that the employee submit medical certification by a health care provider. 29 U.S.C. § 2613(a).  If the employee fails to provide medical certification in a timely manner, 'the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave.'  29 C.F.R. § 825.311(b).  The regulations provide that once an employee informs the employer of the need

19

> to take FMLA leave, the employer is obligated to provide 'specific written notice of the employee's obligations, including the duty to provide medical certification and the consequences for failing to do so.'"  Perry v. Jaguar of Troy, 353 F.3d 510, 514 (6th Cir. 2003) (citing 29 C.F.R. § 825.301(c)(2).))

> "Defendant argues that Hackney never took the necessary steps to request or submit medical certification forms in connection with her February and March 2004 absences. However, it is clear that it was Defendant's burden to request medical certification from Hackney, regardless of Hackney's awareness of such a requirement from her previous experience submitting medical certification forms in connection with her request for FMLA leave due to kidney stones."  (*22-23)

As just noted in Hackney, Department of Corrections "always has the burden" to designate leave as FMLA qualifying, and plaintiff invites the court to look through this record -- there is nothing showing that the State met this burden.  Next, the Hackney decision notes that the Department is then "obligated to provide 'specific written notice of the employee's obligations, including the duty to provide medical certification and the consequences for failing to do so.'"  Again, there is nothing in this record showing any written notice in this manner to Rick Lind from the State.  On summary judgment, this was defendant's burden to come forth with some evidence to show this 15-day time period ever began to run as to Rick Lind.  In the absence of such evidence, and plaintiff believes it is undisputed there is an absence of such evidence here, whether the certification which defendant now admits was "pristine" was submitted on July 30, 2003 or on October 1, 2003, is of no consequence -- because defendant never triggered the 15-day deadline by invoking or fulfilling any of its duties under the FMLA.  Even if plaintiff's "pristine" certification was provided for the first time on October 1, 2003, his

20

leave should have qualified as FMLA leave and defendant interfered with his rights under the Act as a matter of law, warranting summary judgment for plaintiff.

Defendant spends a great portion of its brief attempting to demonstrate why plaintiff's allegation that he submitted his certification on July 30, 2003 is "illogical," while its version of the facts, that he did not submit it until October 1, 2003 (or, more accurately, Dr. Freebern's office did not submit it until that date) is "logical." As just argued, however, it is simply not relevant which "version" makes more logical sense, defendant still should lose this case even if this court accepts its date of October 1, 2003. Regardless, plaintiff does not concede that there is any logic to defendant's version under the true facts of this case. Defendant cannot create an issue of fact on whether this July 30, 2003 CMS-95 physician statement was submitted by Rick to it.

Again, defendant appears to be presenting this court with the version provided by its attorney, not by any witnesses or competent evidence. Most particularly, defendant presents this court with nothing to refute the testimony of Rick himself or his union representatives that not only had the certification been submitted to the Warden's office July 30, 2003, but they continually checked with Pam Verstraete and the "other lady that works in the office" and were repeatedly assured that the documentation, including Dr. Freebern's physician statement, had been received and sent to Springfield. Specifically, Lind testified that between July 30 and August 7, 2003, he asked Ms. Verstraete about the documentation and "she told me it was on the Warden's desk." (See Lind Deposition, p.

21

34.)  Lind testified that in the "subsequent conversation," Verstraete told him "everything

had been sent to Springfield."  (Id., p. 35.)  Likewise, Jeff Papish, one of plaintiff's union

representatives, testified in the Civil Service Commission proceedings:

>             "Pam Verstraete and the other lady that works in the office down there …
> assured us many times that it was sent off.  They're awaiting word."  (See Exhibit
> 5, p. 106.)

If the Department had never received the physician statement on July 30, 2003, one

would certainly expect the response of Verstraete and the "other lady that works in the

office" not to have been "it was sent off," or "it was on the Warden's desk," but, instead,

"what are you talking about -- you never gave me any physician statement on July 30,

2003."

Perhaps more importantly in the summary judgment proceedings, it was

defendant's burden to come forth with some affirmative evidence to refute these facts

which the State absolutely does not do.  Where is any testimony from Pam Verstraete that

she did not have these conversations?  Where is any affidavit from any witness that Rick

Lind, Jeff Papish and Randy Sanders were not assured that the paperwork was sent off to

Springfield.  Recall, all three testified that it was only after they got no response from

their repeated inquires as to the status of the July 30, 2003 paperwork that Rick Lind

resubmitted the second physician statement signed by Dr. Freebern on August 14, 2003.

Finally, defendant can speculate all it wants as to the true date Dr. Freebern signed this

physician statement, but it has absolutely no evidence to refute Dr. Freebern's Affidavit,

22

paragraph 5, in which he affirms that he signed the July 30, 2003 physician statement on July 30, 2003. While Verstraete claims the first time she saw this "pristine" July 30, 2003 physician statement was October 1, 2003, she could not state under oath that she had personal knowledge of facts which would dispute Rick Lind's statement that he turned the "pristine" document into the Warden's office on July 30, 2003. (Exhibit 12, pp. 61-63.)

However, plaintiff's primary point remains that even if there is a question a fact whether the physician statement was provided on July 30, 2003 or October 1, 2003, defendant never informed Rick Lind, and certainly has not presented to this court, any "specific written notice" showing it gave Rick Lind notice of his obligations under the FMLA, including his duty to provide medical certification, and the consequences to Rock for failing to do so. Accordingly, because defendant now admits that the July 30, 2003 certification was in no way deficient, even if it was provided on October 1, 2003, this must mean that the leave qualifies as FMLA leave and defendant interfered with Rick's rights by suspending him and firing him.

### B. Plaintiff Did Not Fail To Comply With The Requirements Of the Collective Bargaining Agreement Because It Is Undisputed He Was Not On Proof Status.

At pp. 18 through 20, defendant argues, citing Gilliam v. United Parcel Service, Inc., 233 F.3d 969, 971 (7th Cir. 2000): "If the Collective Bargaining Agreement has more specific terms concerning the notice requirement, the employer is entitled to follow

23

those terms."  However, it is undisputed that the provision on which the defendant

attempts to rely does not apply to Rick Lind in this situation.

Specifically, defendant cites the provision "whereby an employee who has utilized

all his accumulative sick leave days … ."  Plaintiff previously attached to his Motion for

Summary Judgment as Exhibit 10 defendant's Responses to Request to Admit.  Paragraph

17 read:

> "Admit that as of July 24, 2003, Rick Lind had available to him 6 days of
> alternative use time that he could have utilized for absences due to his serious
> medical condition."

Defendant responded that it "admits that plaintiff had 6 days of alternative use time

available for use."  Thus, clearly, the predicate requirement for the provision on which

defendant wishes to hang its hat, that the employee has utilized all his accumulated sick

leave days, does not apply!

Second, although defendant attempts to be cute with this by not identifying what

we are truly talking about here, what it is talking about is the "furnish proof status" policy

whereby, if an employee has utilized all of his sick leave days, he has to provide written

authorization from his physician if the employee has been placed on furnish proof status

by management under the provisions of its Affirmative Attendance Policy,

Administrative Directive 03.01.301.  (Exhibit 6.)  The Civil Service Commission found,

as a matter of law, that Rick Lind was not on furnish proof status.  Exhibit 3.

Specifically, as defendant quotes at p. 19, "Prior to requesting [illness or injury] leave,

24

the employee shall inform the employer in writing the nature of the disability and

approximately length of time needed for leave."  But plaintiff was not on proof status and

defendant admitted this!

Paragraph 18 of the Request to Admit (see Exhibit 10) asked defendant to "admit

that Rick Lind was not on furnish proof status as of July 24, 2003."  Without any

qualification or objection, defendant's response was:  "Admit."  Therefore, this policy is

absolutely not at issue in this case.

Even to the extent it could arguably be applicable, the only evidence before this

court is that the Department did not actually enforce this policy.  (See plaintiff's citations

in his reply to Additional Material Fact No. 13 above, particularly the admission of the

Assistant Attorney General during the Civil Service Commission proceedings that the

Department had never mentioned in its case against Rick Lind that "medical leaves of

absence have to be approved prior to the actual leave, and that's not what the policy says

… ," as well as the testimony of Jeff Papish that an employee at the East Moline

Correctional Center did not have to submit his request for alternative time before he takes

that time.  Finally, see the explicit admission of Warden Jungwirth that Rick Lind would

not be required to provide medical documentation to cover his absences if he was not on

furnish proof status.  (Jungwirth Dep., p. 78.)

Furthermore, even if this policy applied (which undisputedly it does not),

defendant could not avail itself of this policy because this (irrelevant) policy of the

25

Collective Bargaining Agreement is not a "neutral policy," but is less favorable than the

FMLA.  See <u>Williams</u> v. <u>Illinois Department of Corrections</u>, 2007 U.S. Dist. LEXIS

17119 (S.D. Ill., March 9, 2007), in which the State attempted to use almost the same

policy in a FMLA case, arguing that it was a "neutral policy," which the court rejected:

> "In this case, the Collective Bargaining Agreement required advanced
> written notice along with some minimal details about why the leave was needed
> and how long it would be.  Williams did not technically comply with these rules,
> but this failure is likely attributable to IDOC's interference with Williams' attempt
> to take FMLA leave even before he got to the stage of officially submitting a
> proper request."  (Williams at * 15.)

In this case, recall that it is undisputed Rick encountered an "unforeseeable" need for

leave and "the FMLA gives the employee 15 calendar days" to submit certification.

Here, defendant, in attempting to invoke a policy which requires Lind to either give

"prior" written request or at least within five days, makes this not a neutral policy, even if

it did apply.  Finally, defendant omits the last section of the C.F.R. citation, 29  C.F.R. §

825.302(d) which reads:

> "However, failure to follow such internal employer procedures will not
> permit an employer to disallow or delay an employee's taking FMLA leave if the
> employee gives timely verbal or other notice."

In any event, this policy, which undisputedly does not apply to Rick Lind because he was

not on furnish proof status, cannot be used to avoid summary judgment by the defendant.

26

## III.

**THE DEPARTMENT DID INTERFERE WITH PLAINTIFF'S FMLA RIGHTS, ITS "INTENT" IS NOT RELEVANT, AND IT DID NOT DISCHARGE HIM FOR ANY VALID REASON.**

Defendant's final argument is that it did not interfere with plaintiff's FMLA rights by discharging him, but defendant argues:

> "The facts instead illuminate show that plaintiff was discharged, not in an attempt to interfere with or constrain plaintiff from exercising his rights under the FMLA, but because he violated an independent, neutral Department policy regarding proof status."  (Defendant's Brief at p. 25.)

The facts do not "illuminate" or "show" this at all -- again, it is absolutely undisputed in this case that Rick Lind was not on furnish proof status.  See Exhibit 3 and Exhibit 10, answer to Request to Admit 18.  It is unfathomable to plaintiff why defendant persists with this argument not only when the Civil Service Commission explicitly found that Lind was not on proof status, **but when defendant has admitted this in this litigation!** Again, Request to Admit No. 18 reads as follows:

> "18.  Admit that Rick Lind was not on furnished proof status as of July 24, 2003.

**RESPONSE:**

> Admit."  (See Exhibit 10, No. 18, at p. 6.)

Finally, it is irrelevant whether "the Department had an understanding that plaintiff was on proof status."  (Brief, p. 26.)  As stated in <u>King</u> v. <u>Preferred Tech. Group</u>, 166 F.3d 887, 891 (7th Cir. 1999):

27

"When an employee alleges a deprivation of these substantive guarantees, the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave. In such cases, the intent of the employer is immaterial.  See <u>Diaz</u> v. <u>Fort Wayne Foundry Corp.</u>, 131 F.3d 711, 713 (7th Cir. 1997) ('We shall continue to resolve suits under the FMLA . . . by asking whether the plaintiff has established, by a preponderance of the evidence, that he is entitled to the benefit he claims.'); see also <u>Hodgens</u> v. <u>General Dynamics Corp.</u>, 144 F.3d 151, 159 (1st Cir. 1998) ('Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.')."

Thus, it is "immaterial" what the intent of the Department of Corrections was -- it is immaterial whether the Department had a false "belief" that Rick Lind was on proof status.  Instead, summary judgment is warranted because there are truly no issues for a trier of fact.  Plaintiff has demonstrated that the Department of Corrections has no competent witness (and again, speculation and extrapolation by its attorney cannot constitute competent evidence) that Rick Lind was not entitled to the "disputed leave." There is no dispute that before the discipline took place, defendant had in its possession two completed CMS-95 statements authorizing Rick to be off work for the period of July 24, 2003 to August 6, 2003 due to his serious medical condition, that Warden Jungwirth, under written policy, was to approve or disapprove the leave request and that Jungwirth never did render such decision, but yet effective October 16, 2003 suspended Rick and then fired him on November 6, 2003.

## <u>CONCLUSION</u>

Regardless of any fact questions about whether Rick Lind did, in fact, give Pam Verstraete the July 30, 2003 physician statement on that date (July 30, 2003), defendant

28

has now admitted that it had received that physician statement by, at the latest, October 1,

2003.  And because defendant also now admits that this was a "pristine" certification

which was in "no way deficient," because defendant now admits that Rick Lind had a

serious medical condition and because defendant admits that the July 30, 2003 physician

statement fully and completely covers the "disputed leave" period at issue here -- July 24,

2003 through August 6, 2003, summary judgment is mandated for plaintiff.  See

Ransdell, supra:

> "Defendant's first argument needs only a brief mention. The defendant's
> position - that plaintiff could not request medical leave on January 5 because her
> employment was terminated on December 23 - begs the question whether plaintiff
> was entitled to medical leave under the FMLA on December 23rd. If she was, then
> termination of her employment on December 23 interfered with her rights under
> the FMLA.
>
> As the Kauffman court emphasized, the proper inquiry is whether the
> employer 'respected' Plaintiff's entitlements under the statute.  426 F.2d at 885.
> The Defendant does not dispute that Plaintiff's employment was terminated
> because she was absent from work, so the narrow question presented in this case is
> whether she was entitled to take FMLA leave on December 23. For purposes of
> this motion, entitlement depends on Plaintiff's notice to the employer of her need
> for leave."  (Ransdell, *14-15)

The narrow question of this case is whether Rick Lind was entitled to take FMLA leave

between July 24, 2003 and August 6, 2003, and defendant has now admitted that he was.

Because defendant had never invoked the FMLA certification requirements, never

advised Rick Lind of the "anticipated consequences" of his "failure to provide adequate

certification" (29 C.F.R. 825.305(d)), it is of absolutely no material consequence whether

the Department received the "pristine" certification on July 30, 2003 or October 1, 2003.

29

Even if the latter date is the date on which the Department received the certification, Rick Lind was still entitled to FMLA leave for the period of July 24, 2003 to August 6, 2003, and the defendant undisputedly interfered with his rights under the statute by imposing the suspension and termination for missing work on the dates Rick sought medical leave and provided proper documentation to support such request.

After a review of all the "material facts" the only dispute that the State of Illinois can raise in this case is whether or not Rick Lind submitted the July 30, 2003 physician statement to the Warden's office on July 30, 2003 or, as the State wishes this court to believe on October 1, 2003. However, given the fact that the defendant admits that it never in writing notified Mr. Lind of his need to provide proper certification from a medical provider regarding his need for the leave and its admission that Rick suffered from a serious medical condition and had provided proper medical certification to approve the leave, there is no issue of material fact for the trier of fact to decide as to whether the defendant properly interfered with Rick's rights under the FMLA.

There is simply no true issue for trial and summary judgment as to liability should be entered.

RICK LIND, Plaintiff

By: /s/ Stephen T. Fieweger

30

For:
KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Plaintiff
1000 - 36th Avenue
P.O. Box 950
Moline, IL 61266-0950
Telephone:  309-797-3000
Fax:  309-797-2167
Email:  sfieweger@katzlawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 19, 2007, I electronically filed **Plaintiff's Reply to Defendant's Response to Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

      Sarah R. Kerley
      Assistant Attorney General
      500 South Second Street
      Springfield, IL 62706
      Fax:  217-524-5091

and I hereby certify that on March 19, 2007, I mailed by United States Postal Service, the document(s) to the following non-registered participant(s).:  None.

      RICK LIND, Plaintiff

      By: <u>/s/ Stephen T. Fieweger</u>

31

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)(2)**

The undersigned certifies pursuant to Local Rule 7.1(B)(2) that Plaintiff's Reply to Defendant's Response to Motion for Summary Judgment contains fewer than 7,000 words [The counting feature on plaintiff's Counsel's word processing package (Word 2000) counted 4,628 words.]   (This includes only the Argument Section.)


/s/Stephen T. Fieweger


s:\wp\worddoc\11260001.29R