UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| RICK LIND, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) No. 05-4059 |
| | ) |
| STATE OF ILLINOIS, through its | ) |
| Agency THE ILLINOIS | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
|    Defendant. | ) |

**JOINT PRE-TRIAL ORDER**

This matter having come before the Court at a pre-trial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.1; and Stephen T. Fieweger having appeared as counsel for the plaintiff, and Sarah R. Kerley, Matthew D. Bilinsky, and Amy D. Gerloff, Assistant Attorneys General, having appeared as counsel for defendant, the following action was taken:

**I.  NATURE OF ACTION AND JURISDICTION**

This is an action for alleged violations of the Family and Medical Leave Act and the jurisdiction of the Court is invoked under 29 U.S.C. § 2601, *et seq.* The jurisdiction of the Court is not disputed.

## II. JOINT STATEMENT

### A. JURISDICTION.

This court has subject matter jurisdiction pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and 28 U.S.C. § 1331.

### B. UNCONTESTED ISSUES OF FACT

1. Rick Lind is employed as a correctional officer by the Illinois Department of Corrections, at its correctional facility located in East Moline, Illinois, Rock Island County, State of Illinois.

2. Defendant, Illinois Department of Corrections, (hereinafter "Department" or "Defendant") is an employer and employs more than 50 persons at the East Moline Correctional Center for purposes of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*.

3. Prior to July 23, 2003, Rick Lind had been employed by the Department of Corrections as a full-time employee for more than 12 months.

4. The Department terminated Plaintiff's employment effective November 10, 2003.

5. Plaintiff appealed his discharge and was reinstated to his position as a correctional officer and awarded full back pay and benefits.

### C. CONTESTED ISSUES OF FACT.

**FOR PLAINTIFF:**

1. Whether Rick Lind provided the Request for Leave of Absence form dated July 24, 2003 to some employee or agent of the Department of Corrections on or about July 30, 2003?

2. When did Rick Lind advise the defendant's employees that his back hurt (i.e., when did plaintiff advise Verstraete that the reason he was calling in sick each day was related to his back injury or exacerbation of his back injury)?

3. Whether Jeff Papish and Randy Sanders inquired of Pam Verstraete or any other employee of the DOC regarding the status of Lind's request for the Leave of Absence form, when they inquired, and what was the substance of the response from Ms. Verstraete or any other employee or agent of the DOC?

4. When did the Department of Corrections, by any of its agents or employees, first received any request for disability leave of absence form from Rick Lind regarding his absence from July 24, 2003 through August 5, 2006, 2003?

5. When, if ever, did the DOC first advise Rick Lind of his rights under the FMLA with respect to his July 24, 2003 leave?

6. Whether the Department allowed or provided Rick Lind at least 15 days from the time it advised him of any request or requirement for documentation to provide such documentation?

7. What are the amount of damages recoverable by plaintiff for lost wages, employment benefits and other compensation lost, interest, actual damages and liquidated damages?

8. Whether prior to July 23, 2003, Rick Lind had been employed by the defendant as a full-time employee and had worked more than 1,250 hours of service during the previous 12-month period?

9. Whether as of July 2003 the defendant through its East Moline Correctional Center was subject to the provisions of the Family and Medical Leave Act?

10. Whether Rick Lind was a person covered under the Family and Medical Leave Act?

11. Whether on July 24, 2003, Rick Lind was provided an Illinois Department of Corrections Personnel Action form for a Request for Leave of Absence from one of the defendant's employees at East Moline Correctional Center?

12. Whether Exhibit 1 is a true and correct copy of the Personnel Action Form provided to Rick Lind on July 24, 2003 by the Illinois Department of Corrections.

13. Whether Dr. Kevin Freebern, D.C., is a licensed health care professional through the State of Illinois?

14. Whether Exhibit 2 is a true and correct copy of Dr. Kevin L. Freebern's Physician Statement dated July 30, 2003?

15. Whether Rick Lind had a "serious health condition" as of July 24, 2003 through August 6, 2003?

16. Whether as of July 24, 2003, Rick Lind had available to him six days of alternative use time that he could have utilized for absences due to illness or injury?

17. Whether Rick Lind was not on furnish proof status as of July 24, 2003?

18. Whether Defendant suspended Rick Lind effective on October 6, 2003 for 30 days pending discharge for missing work on July 24, 25, 28, 29, 30, 31 and August 1, 4, 5, and 6, 2003?

19. Whether defendant terminated plaintiff's employment effective November 10, 2003 for missing work on July 24, 25, 28, 29, 30, 31 and August 1, 4, 5, and 6, 2003?

20. Whether the Illinois Civil Service Commission ruled that the Department of Corrections failed to prove that Rick Lind had violated the Department of Corrections' Affirmative Attendance directive when he called in sick on July 24, 25, 28, 29, 30, 31, and August 1, 4, 5, and 6, 2003 and ordered that Rick Lind be reinstated to his former position as a correctional officer?

21. Whether on February 1, 2005, Rick Lind resumed working as a correctional officer at the East Moline Correctional Center?

22. Whether xhibit 7 is a true and correct copy of a Physician Statement signed by Dr. Kevin Freebern, D.C. on August 14, 2003?

23. Whether Exhibit 8 is a true and correct copy of a Release from work signed by Dr. Kevin Freebern, D.C.?

24. Whether Exhibit 8 indicates that plaintiff was temporarily unable to work from July 24, 2003 to August 7, 2003?

25. Whether Dr. Freebern's release from work slip document (Exhibit 8) was submitted to the defendant by the plaintiff?

26. Whether Exhibit 9 are true and correct copies of Notification of Absence forms for the period of July 24 through August 6, 2003?

27. Whether the documents in Exhibit 9 were submitted by plaintiff to defendant?

28. Whether the July 30, 2003 Physician Statement signed by Dr. Freebern was and is a properly completed form from a licensed physician for purposes of submission for a medical leave of absence and is in no way defective?

29. Whether the second Physician Statement signed by Dr. Freebern, bearing the date of 8/14/03 (Exhibit 7), was received by the East Moline Correctional Center on or before September 5, 2003?

30. Whether the first time the defendant, through its East Moline Correctional Center, requested additional information relative to Rick Lind's request for medical leave of absence (pursuant to the 8/14/03 Physician Statement) was by its letter of Friday, September 5, 2003, in which Warden Jungwirth sought clarification and completion of the form filled out by Dr. Freebern?

31. Whether on Monday, September 8, 2003, the defendant took disciplinary action against plaintiff within three days of its request for additional information on September 5, 2003?

32. Whether Warden Gene Jungwirth was the decision maker with respect to the decision to suspend Mr. Lind for 30 days and then to fire him?

33. Whether the defendant failed to maintain plaintiff's health insurance coverage under it's the defendant's group health insurance plan after the plaintiff was terminated on November 10, 2003?

34. Whether the defendant has not paid plaintiff any of his lost wages for the period of July 24, 2003 through June 30, 2004?

35. Whether defendant has not made contributions to the pension and retirement plans for the period between November 10, 2003 and June 30, 200?

36. Whether the defendant did not pay Rick Lind interest on his back pay that it had paid him for the period of July 1, 2004 through January 31, 2005?

37. Whether from July 1, 1999 through October 16, 2003, plaintiff was provided health insurance coverage through defendant's Central Management Services with Health Alliance HMO Group Health Plan?

38. Whether after Rick Lind's termination on November 10, 2005, the defendant did not provide plaintiff with a COBRA notification form for continuation of benefits under the group health insurance plan?

39. Whether prior to the commencement of the 30-day suspension pending discharge on October 13, 2003, the defendant knew that Rick Lind was seeking a leave of absence for medical reasons for the period commencing July 24, 2003 onward?

40. Whether the defendant never notified Rick Lind that it was denying his request for a medical leave of absence for the period beginning July 24, 2003?

41. Whether defendant terminated Rick Lind without notifying him that his request for a medical leave of absence was denied?

42. Whether more than two weeks before the effective date of the suspension, Pam Verstraete had informed Warden Gene Jungwirth of the fact that the defendant possessed properly completed forms from a licensed physician for purposes of submission for a medical leave of absence, namely, Dr. Freebern's CMS-95 form dated July 30, 2003?

43. Whether the defendant has not disclosed any witness with personal knowledge of facts which would indicate that the Department of Corrections notified Rick Lind in writing of the fact that the time that he had taken off beginning July 24, 2003 may have been designated as leave under the Family and Medical Leave Act?

44. Whether at no time between July 23, 2003 and August 6, 2003, did the State of Illinois send or provide to Rick Lind a medical certification form for the Family and Medical Leave?

45. Whether the defendant has not disclosed any witnesses who have personal knowledge of the facts which would indicate that Rick Lind was notified of his rights to

apply for Family and Medical Leave by the defendant for the period commencing July 24, 2003?

46. Whether the defendant has no documentation showing that between July 23, 2003 and up until the time of Mr. Lind's termination on November 10, 2003, that the defendant, Department of Corrections, notified Rick Lind of his rights under the Family and Medical Leave Act?

47. Whether by October 1, 2003, Dr. Kevin Freebern, a licensed chiropractic physician from the State of Illinois, certified to the State of Illinois, Department of Corrections, that Rick Lind had a medical condition relating to his low back that excused him from work for the period of July 24, 2003 through August 6, 2003?

48. Whether the defendant has no witness who has personal knowledge of the date that the defendant advised Rick Lind of his rights to seek a Family and Medical Leave?

49. Whether the defendant disclosed no witness who had personal knowledge of facts which indicate the date in which the defendant provided Family and Medical Leave Act documents for the period of July 24, 2003 onward?

50. Whether under the defendant's employee handbook issued January 6, 1997, employees of the East Moline Correctional Center, under paragraph E of the Disability Leave of Absence Section, it was required that the Warden will approve or disapprove applications for leave of absence?

51. Whether Warden Gene Jungwirth failed to approve or disapprove Mr. Lind's disability leave of absence in violation of policies set forth under the Employee Handbook?

52. Whether before any discipline took place against Mr. Lind that defendant, Department of Corrections, had sufficient documentation to show it that Rick Lind had a medical condition for which he was seeking a medical leave of absence for the period of July 24, 2003 through August 6, 2003. ?

### **DEFENDANT'S CONTESTED ISSUES OF FACT:**

1. Whether Plaintiff was eligible for leave under the FMLA for each of the days absent from work?

2. Whether Plaintiff had a serious health condition as defined by FMLA?

3. Whether Plaintiff was absent from work because of that serious health condition?

4. Whether Plaintiff gave the Department appropriate notice within one or two business days of his need for leave?

5. Whether Plaintiff provided notice that was sufficient to make the Department aware that he needed FMLA qualifying leave?

6. Whether Plaintiff was able to return to work and perform the functions of his position without taking leave for more than twelve work weeks of leave in a twelve-month period?

7.   Would the Department have discharged Plaintiff even if it had not considered Plaintiff's alleged FMLA-covered absences from work?

### D. CONTESTED ISSUES OF LAW

### PLAINTIFF'S ISSUES:

1. As stated by this court in its September 6, 2007 Order, to prevail on an FMLA interference claim, a plaintiff must show that:

> "(1)  He is eligible for the FMLA's protections;
>
> (2)  His employer was covered by the FMLA;
>
> (3)  He was entitled to leave under the FMLA;
>
> (4)  He provided sufficient notice of his intent to take leave; and
>
> (5)  His employer denied him FMLA benefits to which he was entitled."
> (Order at 4-5.)

As indicated by this court in its summary judgment order, the only issue which remains is No. 4, whether Rick Lind, "provided sufficient notice of his intent to take leave."

2. Whether the Department was put on notice that this was a possible FMLA leave situation and whether it fulfilled its duty or responsibility to inquire further pursuant to 29 C.F.R. § 825.303(b)?

3. Whether the defendant failed to provide written notice of plaintiff's right to seek FMLA leave pursuant to 29 C.F.R. § 825.303(b)?

4. Whether the Department provided Rick Lind reasonable opportunity to cure any alleged deficiency in any particular certification he submitted pursuant to 29 C.F.R. § 825.305(d)?

5. Whether the Department of Corrections allowed Rick Lind at least 15 days to cure any deficiency or alleged deficiency before taking discipline against him? (29 C.F.R. § 825.305(b).)

6. Whether the ruling of the Illinois Civil Service Commission dated January 20, 2005 adopting the decision of the Administrative Law Judge dated January 7, 2005 (including but not limited to the finding that "Lind timely submitted leave of absence slips and a doctor's note for the days in which Lind was absence from work," and "the evidence indicates that Lind had approximately six days of alternative benefit time that he could have used towards his absences from work," and "the DOC should have authorized Lind's use of alternative benefit time for days he was absent from work") are entitled to *res judicata* effect?

7. Whether the amount of damages are recoverable for violation of the FMLA under § 107(a)(1)(A)(i) and (ii)?

8. Whether the defendant can carry its burden of proof to show that its actions were in good faith under § 107(a)(1)(A)(3).

**DEFENDANT'S ISSUES**:

1.   Whether Plaintiff was eligible for leave on each leave day?

2. Whether Plaintiff provided adequate notice as defined by FMLA?

3. Whether the Department interfered with Plaintiff's FMLA benefits?

4. Whether the Department has proven by a preponderance of the evidence that it would have discharged Plaintiff even if it had not considered Plaintiff's alleged FMLA-covered absences?

5. Whether Plaintiff has any claim for damages at all, given that the civil Service Commission decision overturned his discharge, resulting in his reinstatement and with full back pay and benefits?

### E. JURY DEMAND

Plaintiff has filed a jury demand.

## III. PLAINTIFF'S STATEMENT

### A. ITEMIZED STATEMENT OF DAMAGES

Plaintiff has sustained damages equal to loss of back wages, which include wages, shift differential, roll call, pay employer contributions to state pension plan and employer contributions to retirement state system, employer contributions to FICA, employer contributions to Medicare, employer paid health, dental and life insurance premiums from July 24, 2003 through January 31, 2005, the deducting by the payment made in February 2005 of $27,392.64 for back wage payment for the period of July 1, 2004 through January 31, 2005. Based upon the State's disclosure on Bates-stamped document 696, plaintiff's back wage loss for the period of July 24, 2003 through June 30, 2004 is

$42,979.59 ($70,372.13 - $27,392.64). In addition, the health, dental and life insurance premium loss was $10,902.72 from October 16, 2003 through January 31, 2005. The employer contributions to his retirement pension loss is $14,600.23 and the employer contribution to the State Retirement System Savings Plan loss is $3,760.63. The State contributions to Social Security Old Age Retirement Benefits loss equal $4,314.17 and the employer contributions to Medicare loss equals to $1,008.81. In addition, Mr. Lind, due to lack of income as the result of being unemployed, withdrew from the State Retirement System Savings Plan, the sum of $31,949.73 on September 24, 2004. Mr. Lind incurred a $3,194.97 early withdrawal penalty for loss of this compensation. In addition, Mr. Lind claims from September 24, 2004, lost interest earnings on the amount that should still remain in his State Retirement Systems Savings Plan but for the improper termination of him. In addition, plaintiff due to the cancellation of his insurance, without notification by the State to him of this fact, and due to the fact that he was later placed on a replacement insurance through CIGNA Health that did not provide the same coverage as did Health Alliance and the fact that Health Alliance had sought reimbursement of medical bills it claims improperly paid for plaintiff after the cancellation coverage, plaintiff has out-of-pocket medical expenses totalling $5,870.02. That breakdown is as follows:

    Freebern Chiropractic Clinic - $290.00

    Prescription Drugs - $44.68

    Physical Therapy - Hammond-Henry Hospital - $638.31 (CIGNA denial of coverage)

    Prescription drugs $1,039.56 (Denied coverage by CIGNA)

    Freebern Chiropractic Clinic $418.00 (1/2 to 3/24/04)

    Metro MRI - $167.04

    Health Alliance Demand for Reimbursement - $2,706.13

    Freebern Chiropractic - $364.63 (8/4/03 to 11/7/03)

    Hammond-Henry Hospital - $201.67 (10/13 to 11/1/03)

    Therefore, Mr. Lind's back wage, lost benefits and lost other compensation for which he is entitled to recover under § 107(a)(1)(A) of the FMLA totals $86,631.14 including the 10% penalty he paid for early withdrawal from his retirement savings account.

    In addition, Mr. Lind under § 107(a)(1)(A)(ii) of the Family and Medical Leave Act, is entitled to interest on the above-described amount at the prevailing rate. The prevailing rate as of September 14, 2007 is 4.15%. Calculating the interest due from January 31, 2005 through November 5, 2007 results in additional damages for interest amount of $10,086.40 ($4.15 x 1,024 days) with per diem interest each day after November 5, 2007 of $9.85. Plaintiff also is entitled to interest on the back pay loss between the period of July 24, 2003 and January 31, 2005.

Therefore, breakdown of total damages recoverable is as follows: $86,631.14 back wage and other compensation; $10,086.40 interest on back wage and other compensation from January 31, 2005 through the date of trial; interest lost on State Retirement Savings Plan principal of $31,949.73 from September 24, 2004 through trial of $4,130.31 (1,137 days of $3.63 per diem); from September 24, 2004 through date of trial.  Grand Total:  $100,847.85.

Further plaintiff claims liquidated damages equal to that amount or an additional $100,847.85 pursuant to § 107(a)(i)(iii) of the Family and Medical Leave Act for a Grand Total of Damages to date of $201,591.56.

In addition, plaintiff will request reimbursement of attorneys' fees and costs pursuant to § 107(a)(3) of the FMLA.

### IV.  WAIVER OF CLAIMS OR DEFENSES (OR JURY DEMAND)

Not applicable.

### V.  EXHIBITS ATTACHED

The following are attached as exhibits to this order and are made a part hereof:

A.  Stipulation of Uncontested Facts and Issues of Law.

B.  Plaintiff's Witness List.

C.  Defendant's Witness List.

D.  Plaintiff's Exhibit List.

    E.  Defendant's Exhibit List.

    F.  Joint Exhibit List.

    G.  Proposed Jury Instructions (Joint) (or Findings and Conclusions).

    H.  Plaintiff's Proposed Instructions (only if objections by defendant).

    I.  Defendant's Proposed Instructions (only if objections by plaintiff).

**VI.  GENERAL ADDITIONAL**

The following additional action was taken:

IT IS UNDERSTOOD BY THE PARTIES THAT:

There were no disclosed expert witnesses in this case.

Any Trial Briefs or Motions *in Limine* shall be submitted no later than fourteen (14) days prior to the commencement of the trial.

A party may supplement a list of witnesses or exhibits only upon good cause shown in a motion filed and served upon the other parties prior to trial; except that, upon the development of testimony fairly shown to be unexpected, any party may, with leave of court, call such contrary witnesses or use such exhibits as may be necessary to counter the unexpected evidence, although not previously listed, and without prior notice of any other party.

It is mutually estimated that the length of trial will not exceed three full days. The case will be listed on the trial calendar to be tried when reached.

This pre-trial order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice. Such modification may be made either on motion of counsel for any party or on the court's own motion.

IT IS SO ORDERED.

ENTERED: _____

_____
JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

_____   _____
Attorney for Plaintiff(s)                                            Attorney for Defendant(s)

s:\wp\worddoc\11260001.37Joint Pre-Trial Order